UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COLBY HUTTON, on his own behalf and on behalf of others similarly situated,<br><br>                  Plaintiff,<br><br>    v.<br><br>DISCOUNT TIRE CO. OF WASHINGTON, INC. and DISCOUNT TIRE CO., INC.,<br><br>                  Defendants. | No. [ 2:25-cv-2008 ]<br><br>DECLARATION OF JEFFREY LACK |

I, Jeffrey Lack, declare:

1. I am the Vice President of Marketing with The Reinalt-Thomas Corporation. I submit this declaration in support of Defendant's Notice of Removal based on my personal knowledge and review of the relevant business records. I am over 18 years of age and in all other ways competent to testify to the facts in this declaration.

2. Marketing emails sent for the purpose of advertising national Discount Tire retail operations, including the ones identified in the Complaint attached as **Exhibit A**, in the past four years have been sent by employees of The Reinalt-Thomas Corporation.

3. The Reinalt-Thomas Corporation is incorporated in the State of Michigan, with its principal place of business located at 20225 N Scottsdale Road, Scottsdale, Arizona 85255.

DECLARATION OF JEFFREY LACK – 1

1     I declare the foregoing is true and correct to the best of my knowledge under penalty of
2 perjury.

3     SIGNED at Scottsdale, Arizona this 15th day of October, 2025.

*Signed by:*
*Jeffrey Lack*
E95F57704694444...
_____
Jeffrey Lack

DECLARATION OF JEFFREY LACK – 2

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# **CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of October, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, and I hereby certify that a copy was emailed and mailed by United States Postal Service to the following counsel.

Samuel J. Strauss, WSBA #46971
Raina C. Borrelli, *pro hac vice* forthcoming
STRAUSS BORRELLI, LLP
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: 872-263-1100
E-mail: sam@straussborrelli.com
E-mail: raina@straussborrelli.com

Lynn A. Toops, *pro hac vice* forthcoming
Natalie A. Lyons, *pro hac vice* forthcoming
Ian R. Bensberg, *pro hac vice* forthcoming
COHENMALAD, LLP
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: 317-636-6481
E-mail: ltoops@cohenmalad.com
E-mail: nlyons@cohenmalad.com
E-mail: ibensberg@cohenmalad.com

Gerard J. Stranch, IV, *pro hac vice* forthcoming
Michael C. Tackeff, *pro hac vice* forthcoming
Andrew K. Murray, *pro hac vice* forthcoming
STRANCH, JENNINGS & GARVEY, PLLC
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: 615-254-8801
E-mail: gstranch@stranchlaw.com
E-mail: mtackeff@stranchlaw.com
E-mail: amurray@stranchlaw.com

*Attorneys for Plaintiff*

DATED this 15th day of October, 2025.

*s/ Lauren B. Rainwater*
Lauren B. Rainwater, WSBA #43625

DECLARATION OF JEFFREY LACK – 3

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# EXHIBIT A

ELECTRONICALLY FILED
9/9/2025 11:42 AM
Heidi Percy
County Clerk
Snohomish County, WASH
Case Number: 25-2-08460-31

THE SUPERIOR COURT OF THE STATE OF WASHINGTON
FOR THE COUNTY OF SNOHOMISH

| | |
|---|---|
| COLBY HUTTON, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DISCOUNT TIRE CO. OF WASHINGTON, INC., and DISCOUNT TIRE CO., INC.,<br><br>Defendants. | Case No.: 25-2-08460-31<br><br>CLASS ACTION COMPLAINT |

Plaintiff Colby Hutton, on his own behalf and on behalf of others similarly situated, on information and belief except to his own experiences and matters of public record, complains of Defendants Discount Tire Co., Inc. and Discount Tire Co. of Washington, Inc. as follows:

**I.    INTRODUCTION**

1.    In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2.    Among other things, CEMA prohibits transmitting a commercial email to a Washington resident's email address that "[c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

CLASS ACTION COMPLAINT - 1

STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

3. Defendants Discount Tire Co., Inc., and Discount Tire Co. of Washington, Inc collectively, "Discount Tire"), does just what CEMA prohibits.

4. Discount Tire bombards Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with Discount Tire's marketing for fear of missing out and chokes consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, Discount Tire falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges Discount Tire's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.   JURISDICTION AND VENUE

8. The Court has jurisdiction of this case under RCW 2.08.010.

9. Venue is proper in Snohomish County under RCW 4.12.020(3) because Plaintiff's cause of action, or some part thereof, arose in Snohomish County.

## III.   PARTIES

10. Plaintiff Colby Hutton is a resident of Snohomish County, Washington.

11. Defendant Discount Tire Co. of Washington, Inc., is a corporation incorporated in Washington with its principal place of business located at 20225 N. Scottsdale Road, Scottsdale, Arizona 85255, and a registered agent in the State of Washington of: Corporation Service Company, 300 Deschutes Way Suite 208 MC-CSC1, Tumwater, WA 98501.

12. Defendant Discount Tire Co., Inc. is a corporation incorporated in Arizona with a registered agent in the State of Arizona of: Corporation Service Company, 7955 S. Priest Dr.,

CLASS ACTION COMPLAINT - 2

Suite 102, Tempe, AZ 85284.

## IV.     FACTUAL ALLEGATIONS

### A.     CEMA protects Washington consumers from deceptive spam emails.

13.     The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

14.     In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

15.     In the nearly three decades since, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

16.     And the problems are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

17.     In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

18.     In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

19.     Even when bulk commercial email marketers are operating under color of consumer consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

20.     Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

21.     This includes emails sent to consumers from businesses with which they have no

CLASS ACTION COMPLAINT - 3

**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

1  prior relationship—by virtue of commercial data brokers and commercial data sharing
2  agreements.

3      22.     Simply conducting the routine affairs of daily life often exposes consumers to
4  unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email
5  address for everything from opening a bank account to getting your dog's nails trimmed, and …
6  [o]nce you hand over your email address, companies often use it as an all-access pass to your
   inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages,
7
   and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe*
8
   *Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-
9  R8RU/.

10     23.     The Legislature presciently intended CEMA to "provide some immediate relief"
11 for these problems by prohibiting among other things commercial emails that "contain untrue or
   misleading information in the subject line." Laws of 1998, ch. 149, § 1.
12
       24.     CEMA thereby protects Washington consumers against the "harms resulting from
13
   deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or
14
   fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).
15
       25.     CEMA's "truthfulness requirements" increase the costs of sending deceptive
16 commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

17     26.     CEMA's "truthfulness requirements" thereby advance the statute's aim of
18 protecting consumers "from the problems associated with commercial bulk e-mail" while
   facilitating commerce "by eliminating fraud and deception." *Id.*
19
       27.     CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language,
20
   CEMA unambiguously prohibits "sending Washington residents commercial e-mails that
21
   contain *any* false or misleading information in the subject lines of such e-mails." *Certification*
22 *from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47
23 (Wash. 2025).

24     28.     CEMA's protections do not depend on whether any email was (really or fictively)

25
   CLASS ACTION COMPLAINT - 4

Strauss Borrelli PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

Docusign Envelope ID: 1D37BD2A-4C3D-44FE-AE5A-A825A05F7E94

solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

29. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

### B. The subject lines of Discount Tire's marketing emails make false time scarcity claims.

30. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

31. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patters to Light*, *supra* para. 26, at 22.

32. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 26, at 26.

33. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

34. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

35. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

Docusign Envelope ID: 1D37BD2A-463D-44FE-AE5A-A825A0FF7E04

36. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

37. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

38. These false time scarcity claims are a staple of Discount Tire's email scheme to corral consumers to purchase its products, as the following examples demonstrate:

39. **Urgent Spam Emails.** Discount Tire is practiced in this trick of luring in consumers through an urgent subject heading that does not reflect the true availability of the deal itself, as these examples demonstrate:

40. For example, on September 22, 2024, Discount Tire blasted consumers with an email with the subject heading, "LAST DAY to save on Cooper and Goodyear tires!"

41. But it was not the last day for that deal.

42. On September 23, 2024, Discount Tire again blasted consumers with an email saying, in the subject heading: "LAST DAY to save on Cooper and Goodyear tires!"

43. In other words, one day after sending out an email advertising a deal as limited to that day only, Discount Tire spammed consumers with precisely the same deal. Thus, the first email created a false sense of urgency for the consumer.

44. This reflects Discount Tire's pattern of creating false urgency for its deals.

45. On January 20, 2025, Discount Tire blasted consumers with another email with the subject heading: "LAST DAY to save up to $80 on Michelin tires."

46. But again, January 20, 2025 was not the last day for this deal.

47. A little over a week later, on January 30, 2025, Discount Tire again bombarded consumers with another email offering, in the subject heading: "Save up to $80 on all Michelin tires!"

48. And again, on March 16, 2025, Discount Tire sent an email to consumers with the subject heading: "Up to $160 OFF tires & wheels ends tonight!"

CLASS ACTION COMPLAINT - 6

STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

49. But that deal did not end "tonight."

50. On March 21, 2025, less than a week later, Discount Tire blasted consumers with another email with the subject heading: "It's back! Up to $160 OFF with Spring Savings."

51. In another example, on June 13, 2025, Discount Tire spammed consumers with an email saying, in the subject heading: "$80 OFF Pirelli tires ends today!"

52. But consumers did not need to worry about "missing out" because, on June 20, 2025, Discount Tire sent another email with the subject heading: "$80 OFF tires from Pirelli, Bridgestone & Continental."

53. And in a recent instance, on July 4, 2025, Discount Tire sent consumers an email with the subject heading: "Last chance for up to $160 off tires & wheels."

54. But (again) it wasn't the last chance for this deal.

55. Just four days later, on July 8, 2025, Discount Tire bombarded consumers again an email, offering, in the subject heading: "Summer Savings start now—up to $160 of tires & wheels."

56. And the July 4th deal continued yet another day. On July 9, 2025, Discount Tire again sent another email with the subject heading: "Save up to $160 on tires & wheels instantly."

57. As these emails show, Discount Tire engages in an email marketing strategy whereby it creates a false sense of urgency, misrepresents when sales end, and then arbitrarily extends those sales to pull in consumers with subject headings misrepresenting the availability of deals.

58. These and other examples of Discount Tire's commercial emails whose subject lines contain false or misleading statements are attached to this Class Action Complaint as Exhibit A.

**C.    Discount Tire knows when it sends emails to Washington residents.**

59. A sophisticated commercial enterprise, like Discount Tire, who is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are

CLASS ACTION COMPLAINT - 7

peculiarly with its knowledge.

60. First, the sheer volume of Discount Tire's email marketing put it on notice that Washington residents would receive its emails. Since the beginning of 2025, Discount Tire has been blasting out marketing emails at a rate averaging roughly more than two emails per week.

61. Second, Discount Tire may obtain location information tied to email addresses when consumers make purchases from Discount Tire through digital platforms, including Discount Tire's website, or otherwise self-report such information to Discount Tire.

62. Third, Discount Tire may obtain location information tied to email addresses by tracking the IP addresses of devices used to open Discount Tire's emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

63. Specifically, Discount Tire appears to use the platform Salesforces Marketing Cloud to manage its email marketing campaigns. Platforms like Salesforce allow Discount Tire to identify anyone who receives its marketing emails, determine who opens them, and track who clicks on any links within them.

64. Discount Tire is likely able to infer the general geographic location of recipients by state based on their IP address at the time of email open or link click.

65. Fourth, Discount Tire may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

66. Fifth, Discount Tire may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

67. Sixth, Discount Tire may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW

CLASS ACTION COMPLAINT - 8

Strauss Borrelli PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

19.190.020(2).

68. It is thus highly probable that a seller of Discount Tire's size and sophistication employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.  Discount Tire violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

69. Discount Tire has bombarded Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of his right to be free from such annoyance and harassment under CEMA.

70. Plaintiff received the email promotions described in paragraphs 50 and 52 above.

71. Plaintiff Hutton received the June 13, 2025, email with the subject heading: "$80 OFF Pirelli tires ends today!"

72. Plaintiff Hutton received the July 4, 2025 email with the subject heading "Last chance for up to $160 off tires & wheels."

73. These emails were false or misleading in violation of CEMA, for misrepresenting the timing of the deals, as further described in ¶¶ 3–57.

74. These emails contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V.  CLASS ALLEGATIONS

75. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendants sent or caused to be sent any email listed in Exhibit A during the Class Period.

76. Excluded from this definition of the Class are Defendants' officers, directors, and employees; Defendants' parents, subsidiaries, affiliates, and any entity in which Defendants have a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

77. The Class Period extends from the date four years before this Class Action

CLASS ACTION COMPLAINT - 9

STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

Complaint is filed to the date a class certification order is entered in this action.

78. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendants sent or caused to be sent during the Class Period to email addresses held by Washington residents.

79. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

80. There are questions of law or fact common to the class, including without limitation whether Defendants sent commercial emails containing false or misleading information in the subject line; whether Defendants sent such emails to email addresses they knew or had to reason to know were held by Washington residents; whether Defendants' conduct violated CEMA; whether Defendants' violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendants should be enjoined from such conduct.

81. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendants violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

82. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; have no interest adverse to the Class; and have retained competent counsel extensively experienced in consumer protection and class action litigation.

83. Defendants have acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

84. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendants have violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

85. A class action is superior to other available methods for the fair and efficient adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action on as a class presents no special difficulties.

## VI.   CLAIMS TO RELIEF

### First Claim to Relief

### Violation of the Commercial Electronic Mail Act, RCW 19.190.020

86. Plaintiff incorporates and realleges paragraphs 1–72 above.

87. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

88. Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

89. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

90. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendants knew, or had reason to know, were held by Washington residents, including because Defendants knew that Plaintiff and putative members were Washington residents through "information is available, upon request, from the registrant of the internet domain name

CLASS ACTION COMPLAINT - 11

STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

Docusign Envelope ID: 1D37BD2A-4C3D-44FF-AF5A-A825A0FF7E04

contained in the recipient's electronic mail address". RCW 19.190.020(b)(2).

91. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

92. For Defendants' violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

## Second Claim to Relief

### Violation of the Consumer Protection Act, RCW 19.86.020

93. Plaintiff incorporates and realleges paragraphs 1–72 above.

94. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

95. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

96. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

97. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

98. Defendants are "persons" within the meaning of CEMA. RCW 19.190.010(11).

99. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

100. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that

Docusign Envelope ID: 1D37BD2A-463D-44FF-AF5A-A825A0FF7E04

Defendant knew, or had reason to know, were held by Washington residents.

101. Defendants initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

102. For Defendants' violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII. JURY DEMAND

103. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII. PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendants from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Attorney signature block to follow on next page.]*

CLASS ACTION COMPLAINT - 13

STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

RESPECTFULLY SUBMITTED AND DATED this 9th day of September, 2025.

By:  /s/ Samuel J. Strauss
Samuel J. Strauss, WSBA #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N Michigan Ave., Suite 1610
Chicago, Illinois 60611
Telephone: (872) 263-1100
Facsimile:  (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Telephone: (317) 636-6481
ltoops@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Telephone: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

*Attorneys for Plaintiff*

**\*Applications for admission *pro hac vice* forthcoming**

CLASS ACTION COMPLAINT - 14

**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100

— **EXHIBIT A** —

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
SNOHOMISH COUNTY

| | |
|---|---|
| COLBY HUTTON, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>DISCOUNT TIRE CO. OF WASHINGTON, INC., and DISCOUNT TIRE CO., INC.,<br><br>Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**EXHIBIT A** |

| Date | Subject Line |
|---|---|
| 9/22/24 | LAST DAY to save on Cooper and Goodyear tires! |
| 1/20/25 | LAST DAY to save up to $80 on Michelin tires. |
| 3/16/25 | Up to $160 OFF tires & wheels ends tonight! |
| 6/13/25 | $80 OFF Pirelli tires ends today! |
| 7/4/25 | Last chance for up to $160 off tires & wheels. |

CLASS ACTION
COMPLAINT - EX. A

1

STRAUSS BORRELLI PLLC
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611-7502
(872) 263-1100