UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COLBY HUTTON, on his own behalf and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>THE REINALT-THOMAS CORPORATION,<br><br>Defendant. | Case No.: 2:25-cv-02008-TL<br><br>Honorable Judge Tana Lin<br><br>AMENDED CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Colby Hutton, on his own behalf and on behalf of others similarly situated, on information and belief except to his own experiences and matters of public record, complains of Defendant The Reinalt-Thomas Corporation, ("Reinalt-Thomas") as follows:

## I.    INTRODUCTION

1. In 1998, to protect Washington consumers from the annoyance and harassment caused by the burgeoning spam email industry, the Washington State Legislature enacted the Commercial Electronic Mail Act (CEMA), codified at chapter 190 of title 19 of the Revised Code of Washington (RCW).

2. Among other things, CEMA prohibits transmitting a commercial email with "false

AMENDED CLASS ACTION COMPLAINT
Page 1

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

or misleading information in the subject line" to the email address of a Washington resident. RCW 19.190.020(1)(b).

3. Defendant Reinalt-Thomas, doing business as Discount Tire, a wheel and tire retailer, engages in the precise activity which CEMA prohibits.

4. Reinalt-Thomas spams Washington consumers, including Plaintiff, with commercial emails whose subject lines employ various tactics to create a false sense of urgency in consumers' minds—and ultimately, from consumers' wallets.

5. This false urgency wastes consumers' time by enticing them to engage with Reinalt-Thomas's marketing efforts for fear of missing out. It also floods consumers' email inboxes with repeated false notifications that the time to act—*i.e. purchase*—is short.

6. And through this deceptive time-sensitivity, Reinalt-Thomas falsely narrows the field—steering consumers away from shopping for better deals—to its own products that must be purchased *now*.

7. Plaintiff challenges Reinalt-Thomas's harassment of Washington consumers with deceptive marketing for violations of the Commercial Electronic Mail Act (RCW 19.190.020) and the Consumer Protection Act (RCW 19.86.020) for injuries caused, additionally seeking injunctive relief against such violations in the future.

## II.   JURISDICTION AND VENUE

8. Defendant has invoked this Court's jurisdiction under 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

9. Venue is proper in the Western District of Washington under 28 U.S.C. § 1441 because this district and division embrace the place from which Defendant removed this action, Snohomish County Superior Court (Case No. 25-2-08460-31).

AMENDED CLASS ACTION COMPLAINT
Page 2

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

### III.   PARTIES

10. Plaintiff Colby Hutton is a resident of Snohomish County, Washington.

11. Defendant Reinalt-Thomas Corporation, is incorporated in Michigan with its principal place of business in Scottsdale, Arizona.

### IV.   FACTUAL ALLEGATIONS

**A.   CEMA protects Washington consumers from deceptive spam emails.**

12. The Supreme Court of Washington has made clear: "[A]ll Internet users … bear the cost of deceptive spam." *State v. Heckel*, 143 Wn. 2d 824, 835 (2001) (en banc).

13. In 1998, the Legislature found that the "volume of commercial electronic mail" was "growing," generating an "increasing number of consumer complaints." Laws of 1998, ch. 149, § 1.

14. While it's been nearly three decades since CEMA's enactment, the problems caused by unsolicited commercial email, *i.e.* spam email, have grown exponentially.

15. The problems, however, are not limited to email content. Subject lines of emails are framed to attract consumers' attention away from the spam barrage to a message that entices consumers to click and, ultimately, *purchase*.

16. In 2003, the United States Congress found that "[m]any senders of unsolicited commercial electronic mail purposefully include misleading information in the messages' subject lines in order to induce the recipients to view the messages." 15 U.S.C. § 7701(a)(8).

17. In 2012, one study estimated that Americans bear "costs of almost $20 billion annually" due to unsolicited commercial email. Justin M. Rao & David H. Reiley, *The Economics of Spam*, 26 J. of Econ. Perspectives 87, 88 (2012).

18. Even when bulk commercial email marketers are operating under color of consumer

AMENDED CLASS ACTION COMPLAINT
Page 3

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

consent, the reality is that "[m]ost privacy consent"—especially under the "notice-and-choice" approach predominant in the United States—"is a fiction." Daniel J. Solove, *Murky Consent: An Approach to the Fictions of Consent in Privacy Law*, 104 Boston Univ. L. Rev. 593, 596 (2024).

19. Consumers therefore routinely "consent" to receive flurries of commercial emails which they did not meaningfully request and in which they have no genuine interest.

20. This includes emails sent to consumers from businesses with which they have no prior relationship—by virtue of commercial data brokers and commercial data sharing agreements.

21. Simply conducting the routine affairs of daily life often exposes consumers to unanticipated and unwanted volumes of commercial email. "Nowadays, you need an email address for everything from opening a bank account to getting your dog's nails trimmed, and … [o]nce you hand over your email address, companies often use it as an all-access pass to your inbox: Think of shopping websites that send account updates, deals, 'we miss you' messages, and holiday promotions throughout the year. It's too much." Kaitlyn Wells, *Email Unsubscribe Services Don't Really Work*, N.Y. Times Wirecutter (Aug. 19, 2024), https://perma.cc/U8S6-R8RU/.

22. The Legislature presciently intended CEMA to "provide some immediate relief" for these problems by prohibiting among other things commercial emails that "contain untrue or misleading information in the subject line." Laws of 1998, ch. 149, § 1.

23. CEMA thereby protects Washington consumers against the "harms resulting from deceptive commercial e-mails," which "resemble the type of harms remedied by nuisance or fraud actions." *Harbers v. Eddie Bauer, LLC*, 415 F. Supp. 3d 999, 1008 (W.D. Wash. 2019).

24. CEMA's "truthfulness requirements" increase the costs of sending deceptive commercial emails and thereby reduce their volume. *Heckel*, 143 Wn. 2d at 836.

25. CEMA's "truthfulness requirements" thereby advance the statute's aim of

AMENDED CLASS ACTION COMPLAINT
Page 4

Strauss Borrelli PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

protecting consumers "from the problems associated with commercial bulk e-mail" while facilitating commerce "by eliminating fraud and deception." *Id.*

26. CEMA "mean[s] exactly what it says": in "broad" but "patently clear" language, CEMA unambiguously prohibits "sending Washington residents commercial e-mails that contain *any* false or misleading information in the subject lines of such e-mails." *Certification from U.S. Dist. Ct. for W. Dist. of Wash. in Brown v. Old Navy, LLC*, 567 P.3d 38, 44, 46–47 (Wash. 2025).

27. CEMA's protections do not depend on whether any email was (really or fictively) solicited by consumers, nor on whether consumers relied on any false or misleading statement contained in its subject line. *See Harbers*, 415 F. Supp. 3d at 1011.

28. The statute's only concern is to suppress false or misleading information in the subject line of commercial emails. *See Brown*, 567 P.3d at 44–45.

**B. The subject lines of Reinalt-Thomas's marketing emails make false time scarcity claims.**

29. One common way online marketers "manipulate consumer choice by inducing false beliefs" is to create a false sense of urgency or to falsely claim that consumers' time to act is scarce. Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 4 (2022), https://perma.cc/847M-EY69/; *see also* U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 26 (2022), https://perma.cc/V848-7TVV/.

30. The FTC has identified the "False Limited Time Message" as one example of false time scarcity claims, in which the marketer creates "pressure to buy immediately by saying the offer is good only for a limited time or that the deal ends soon—but without a deadline or with a meaningless deadline that just resets when reached." *Bringing Dark Patterns to Light*, *supra* para. 29, at 22.

AMENDED CLASS ACTION COMPLAINT
Page 5

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

31. "False or misleading scarcity claims can change the behaviour of consumers." *Online Choice Architecture, supra* para. 29, at 27.

32. Representations about the timing and duration of sales, discounts, and other special offers are fundamentally representations about prices, and such representations matter to ordinary consumers. *See, e.g.*, Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Consumer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/.

33. False scarcity claims are psychologically effective. As "considerable evidence" suggests, "consumers react to scarcity and divert their attention to information where they might miss opportunities." *Online Choice Architecture*, *supra* para. 29, at 26.

34. Invoking this time pressure achieves a seller's aim to narrow the field of competitive products and deals, by "induc[ing] consumers to rely on heuristics (mental shortcuts), like limiting focus to a restricted set of attributes or deciding based on habit." *Id.*

35. Under time pressure, "consumers might take up an offer to minimise the uncertainty of passing it up." *Id.*

36. False time scarcity claims thus *harm consumers* by manipulatively distorting their decision-making to *their detriment—and the seller's benefit*.

37. Indeed, one 2019 study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* at 27.

38. False time scarcity claims also harm market competition. Consumers learn to ignore scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.*

AMENDED CLASS ACTION COMPLAINT
Page 6

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

39. These false time scarcity claims are a staple of Reinalt-Thomas's email scheme to compel consumers to purchase its products.

40. Reinalt-Thomas sells tires and automotive accessories at its Discount Tire retail locations and through its website, www.discounttire.com.

41. To advertise its products and encourage purchases from www.discounttire.com, Reinalt-Thomas frequently sends spam emails to consumers.

42. **Urgent Spam Emails.** Reinalt-Thomas is practiced in this trick of luring in consumers through urgent subject headings that do not reflect the true availability of the deal itself, as the following examples demonstrate.

43. For example, Reinalt-Thomas periodically informs consumers that a sale is ending only to advertise a new offer with the same or similar terms soon thereafter. The use of such deceptive subject lines is an established pattern within Defendant's email marketing campaign. A tire sale from early 2024 provides an apt example.

44. On April 7, 2024, Reinalt-Thomas transmitted an email with the subject line: "LAST DAY to save on select Goodyear, Bridgestone and Firestone tires." The message advertised $80 in "instant savings" on three different tire brands with red text emphasizing that it was the "Last Day To Save[.]" The sale included "$80 off a set of Firestone Destination tires."

45. However, the defendant was quick to advertise the same deal again, one week later.

46. In an email sent on April 14, 2024, and titled, "It's the FINAL DAY to save on Bridgestone, Cooper and Firestone tires!" Reinalt-Thomas again offered "$80 off a set of Firestone Destination tires."

47. By reviving the same offer on April 14, Reinalt-Thomas confirmed the falsity of the time scarcity claims it transmitted on April 7, 2024.

AMENDED CLASS ACTION COMPLAINT
Page 7

48. Reinalt-Thomas repeated its scheme in July.

49. On July 14, 2024, it sent consumers an email titled: "Bridgestone and Firestone savings end today!" Text within the email offered $80 off Bridgestone tires, excluding the Blizzak tire model.

50. Yet, two days later, Reinalt-Thomas returned to consumers' inboxes to advertise savings on Bridgestone tires yet again. On July 16, 2024, it sent an email with the headline: "SAVE up to $80 on popular tire and wheel brands!" The first brand listed within the email was Bridgestone.

51. So, the subject line transmitted on July 14, 2024, was intended to mislead consumers by asserting false time pressure. Recipients would again have access to savings on Bridgestone tires two days after the alleged end of the promotion.

52. Within the same month, Reinalt-Thomas repeated its deception yet again.

53. On July 21, 2024, it sent an email with the subject line: "FINAL DAY for Bridgestone and Pirelli deals!" The message offered $80 in savings on select sets of tires from Bridgestone Dueler and Pirelli.

54. In truth, consumers would have considerably more time to obtain savings on those brands.

55. On July 26, 2024, Reinalt-Thomas sent another email titled: "$80 OFF Bridgestone & Pirelli tires!" The body of the message repeated the offer on Bridgestone Dueler and Pirelli tires that appeared in the July 21 email.

56. Thus, despite the unambiguous warning in the July 21, 2024, subject line, that date was not the final day for consumers to obtain the discount.

57. The same ruse was deployed the following month.

AMENDED CLASS ACTION COMPLAINT
Page 8

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

58. On August 11, 2024, Reinalt-Thomas sent an email titled: "Final day to save on Continental, Bridgestone & Firestone tires!" The subject line, however, was not true. As confirmed by the body of the email, the promotion included an $80 discount on a set of tires from Bridgestone excluding the Blizzak tire.

59. August 11 was not the final day on which consumers could access the advertised deal.

60. Three days later, Reinalt-Thomas pelted consumers' inboxes with the same offer in an email titled: "Up to $80 OFF five big tire brands!" The message repeated the same $80 off offer on Bridgestone tires.

61. Another example of Reinalt-Thomas's deceptive strategy occurred in September 2024.

62. On September 22, 2024, Reinalt-Thomas sent consumers a mass commercial email with the subject heading, "LAST DAY to save on Cooper and Goodyear tires!"

63. But September 22 was not the last day for that deal.

64. On September 23, 2024, Reinalt-Thomas again sent consumers an email stating, in the subject line: "LAST DAY to save on Cooper and Goodyear tires!"

65. In other words, one day after sending out an email advertising a deal as limited to that day only, Discount Tire spammed consumers with precisely the same deal. Thus, the first email created a false sense of urgency for the consumer.

66. These misleading representations to consumers demonstrate Reinalt-Thomas's pattern of creating false urgency for its offers.

67. Later in the year, a similarly deceptive advertisement was used to promote a Cyber Monday sale.

AMENDED CLASS ACTION COMPLAINT
Page 9

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

68. On December 2, 2024, Reinalt-Thomas sent an email titled: "Cyber Monday Only: Up to $160 Off Tires & Wheels 🎡 💻 [.]" The message offered up to $80 off tires from a list of eleven brands.

69. Despite Defendant's clear warning on December 2, the exact same deal was available on Tuesday as well.

70. A December 3, 2024, email confirmed that tires from the same brands were available well beyond Cyber Monday. The message was titled, "Final Days for Cyber Monday Deals!" and listed the same eleven brands, in the same order as the December 2, 2024, email.

71. The pattern was repeated in the beginning of 2025, as well.

72. Reinalt-Thomas opened the year by misleading consumers with a January 5, 2025, email carrying the headline: "LAST DAY to take $80 off a new set of tires!" The message listed a $80 discount for select sets of tires from five brands including Bridgestone and Firestone.

73. However, on January 6, 2025, Reinalt-Thomas extended the discount for those two brands in an email with the subject line: "Savings extended! More time to save on Bridgestone & Firestone."

74. By flooding consumers' inboxes with misinformation, such as the false end date reflected in the January 5, 2025, subject line, Reinalt-Thomas ensures that email recipients lack the accurate details needed to make educated buying decisions.

75. In another example from the same month, on January 20, 2025, Reinalt-Thomas sent consumers an email titled: "LAST DAY to save up to $80 on Michelin tires."

76. Yet again, the advertised end date was misleading. January 20 was not the last day for this deal.

77. A little more than a week later, on January 30, 2025, Reinalt-Thomas again

AMENDED CLASS ACTION COMPLAINT
Page 10

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

spammed consumers with another email conveying the same offer in its subject line: "Save up to $80 on all Michelin tires!"

78. Reinalt-Thomas leveraged false time pressures against consumers again in March 2025.

79. On March 16, 2025, it sent consumers an email with the subject line: "Up to $160 OFF tires & wheels ends tonight!" The message identified nine brands that were offered at a discount for the promotion.

80. Less than a week later, on March 21, 2025, Reinalt-Thomas revived the same deal for the same brands. The message sent on that date was titled: "It's back! Up to $160 OFF with Spring Savings."

81. By breaking the same offer into two distinct promotions, each with their own deadline, Defendant creates additional opportunities to levy false time pressures against consumers. Reinalt-Thomas's approach can promote increased sales by first warning consumers of the false deadline, such as the one communicated on March 16, and then again once the revived offer nears its second deadline. This double dragnet strategy allows Defendant to maximize its chances that a consumer will see the promotional email, be influenced by Defendant's false claims of time pressure, and convince them to buy tires now even though the deal is not truly ending.

82. Similarly, on June 13, 2025, Reinalt-Thomas spammed consumers with an email titled: "$80 OFF Pirelli tires ends today!"

83. But consumers need not worry about "missing out" because, on June 20, 2025, Reinalt-Thomas sent another email with the subject heading: "$80 OFF tires from Pirelli, Bridgestone & Continental."

84. In another example, Reinalt-Thomas sent consumers a deceptive email on July 4,

AMENDED CLASS ACTION COMPLAINT
Page 11

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

2025, using the subject line: "Last chance for up to $160 off tires & wheels." The message noted seven brands that were included in the discount promotion.

85. Within days, consumers would have another chance at the same savings.

86. Four days later, on July 8, 2025, Reinalt-Thomas transmitted an email with the heading: "Summer Savings start now—up to $160 of tires & wheels." All seven brands listed in the July 4 email were included in the promotion.

87. These and other examples of the commercial emails that Reinalt-Thomas has sent consumers containing subject lines with false or misleading statements are attached to this Class Action Complaint as Exhibit A.

C.  **Reinalt-Thomas knows when it sends emails to Washington residents.**

88. A sophisticated commercial enterprise, like Reinalt-Thomas, which is engaged in persistent marketing through mass email campaigns across the United States, has several ways of knowing where the recipients of its marketing emails are located. The means it employs are peculiarly within its knowledge.

89. First, the sheer volume of email marketing that Reinalt-Thomas engages in put it on notice that Washington residents would receive its emails.

90. Second, Reinalt-Thomas may obtain location information tied to email addresses when consumers make purchases from Reinalt-Thomas through digital platforms, including the Reinalt-Thomas website, or otherwise self-report such information to Reinalt-Thomas.

91. Third, Reinalt-Thomas may obtain location information tied to email addresses by tracking the IP addresses of devices used to open its emails, which in turn can be correlated to physical location (as illustrated, for example, by the website https://whatismyipaddress.com/).

92. Specifically, Reinalt-Thomas appears to use the platform Salesforce Marketing

AMENDED CLASS ACTION COMPLAINT
Page 12

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

Cloud to manage its email marketing campaigns. Platforms like Salesforce allow Reinalt-Thomas to identify anyone who receives its marketing emails, determine who opens them, and track who clicks on any links within them.

93. Fourth, Reinalt-Thomas may obtain location information tied to email addresses by purchasing consumer data from commercial data brokers such as Acxiom, Oracle, and Equifax, which sell access to databases linking email addresses to physical locations, among other identifiers.

94. Fifth, Reinalt-Thomas may obtain location information tied to email addresses by using "identity resolution" services offered by companies such as LiveRamp, which can connect consumers' email addresses to their physical locations, among other identifiers.

95. Sixth, Reinalt-Thomas may obtain information that the recipients of its marketing emails are Washington residents because that information is available, upon request, from the registrant of the Internet domain names contained in the recipients' email addresses. *See* RCW 19.190.020(2).

96. It is thus highly probable that a seller with the size and sophistication of Reinalt-Thomas employs not just one but several means of tying consumers' email addresses to their physical locations, at least at the state level.

**D.  Reinalt-Thomas violated Plaintiff's right under CEMA to be free from deceptive commercial emails.**

97. Reinalt-Thomas has spammed Plaintiff with commercial emails whose subject lines contain false or misleading statements in violation of his right to be free from such annoyance and harassment under CEMA.

98. For example, Plaintiff received a number of the email promotions described above in Section B, including:

AMENDED CLASS ACTION COMPLAINT
Page 13

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

99. The June 13, 2025, email titled: "$80 OFF Pirelli tires ends today!"

100. The July 4, 2025, email titled: "Last chance for up to $160 off tires & wheels."

101. These emails' subject lines were false or misleading in violation of CEMA for misrepresenting the timing of the deals.

102. These emails' subject lines contained false statements of fact as to the "duration or availability of a promotion." *Brown*, 567 P.3d at 47.

## V. CLASS ALLEGATIONS

103. Plaintiff brings this action under Civil Rule 23 on behalf of the following putative class ("Class"):

> All Washington citizens holding an email address to which Defendant sent or caused to be sent any email listed in Exhibit A during the Class Period.

104. Excluded from this definition of the Class are Defendant's officers, directors, and employees; Defendant's parents, subsidiaries, affiliates, and any entity in which Defendant has a controlling interest; undersigned counsel for Plaintiff; and all judges and court staff to whom this action may be assigned, as well as their immediate family members.

105. The Class Period extends from the date four years before this Class Action Complaint is filed to the date a class certification order is entered in this action.

106. Plaintiff reserves the right to amend the Class definition as discovery reveals additional emails containing false or misleading information in the subject line that Defendant sent or caused to be sent during the Class Period to email addresses held by Washington residents.

107. The Class is so numerous that joinder of all members is impracticable because the Class is estimated to minimally contain thousands of members.

108. There are questions of law or fact common to the class, including without limitation whether Defendant sent commercial emails containing false or misleading information in the

AMENDED CLASS ACTION COMPLAINT
Page 14

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

subject line; whether Defendant sent such emails to email addresses it knew or had to reason to know were held by Washington residents; whether Defendant's conduct violated CEMA; whether Defendant's violation of CEMA constituted a *per se* violation of the Consumer Protection Act, RCW 19.86.020 (CPA); and whether Defendant should be enjoined from such conduct.

109. Plaintiff's claims are typical of the Class's because, among other reasons, Plaintiff and Class members share the same statutory rights under CEMA and the CPA, which Defendant violated in the same way by the uniform false or misleading marketing messages it sent to all putative members.

110. Plaintiff will fairly and adequately protect the Class's interests because, among other reasons, Plaintiff shares the Class's interest in avoiding unlawful false or misleading marketing; has no interest adverse to the Class; and has retained competent counsel extensively experienced in consumer protection and class action litigation.

111. Defendant has acted on grounds generally applicable to the Class, in that, among other ways, it engaged in the uniform conduct of sending uniform commercial emails to Plaintiff and the Class, which violate CEMA and the CPA in the same way, and from which it may be enjoined as to Plaintiff and all Class members, thereby making appropriate final injunctive relief with respect to the Class as a whole.

112. The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, in that, among other ways, Defendant has violated their rights under the same laws by the same conduct, and the only matters for individual determination are the number of false or misleading emails received by each Class member and that Class member's resulting damages.

113. A class action is superior to other available methods for the fair and efficient

AMENDED CLASS ACTION COMPLAINT
Page 15

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

adjudication of the controversy because, among other reasons, the claims at issue may be too small to justify individual litigation and management of this action as a class action presents no special difficulties.

## VI.  CLAIMS TO RELIEF

### First Claim to Relief
**Violation of the Commercial Electronic Mail Act, RCW 19.190.020**

114. Plaintiff incorporates and realleges paragraphs 1–102 above.

115. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

116. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

117. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

118. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that Defendant knew, or had reason to know, were held by Washington residents, including because Defendant knew that Plaintiff and putative members were Washington residents as such "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." RCW 19.190.020(b)(2).

119. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading

AMENDED CLASS ACTION COMPLAINT
Page 16

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

120. For Defendant's violation of CEMA, Plaintiff is entitled to all available relief, including an injunction against further violations.

**Second Claim to Relief**

**Violation of the Consumer Protection Act, RCW 19.86.020**

121. Plaintiff incorporates and realleges paragraphs 1–102 above.

122. The CPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW 19.86.020.

123. A violation of CEMA is a *per se* violation of the CPA. RCW 19.190.030.

124. A violation of CEMA establishes all the elements necessary to bring a private action under the CPA. *Wright v. Lyft*, 189 Wn. 2d 718 (2017).

125. CEMA provides that "[n]o person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message … to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b).

126. Defendant is a "person" within the meaning of CEMA. RCW 19.190.010(11).

127. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transition of "commercial electronic mail messages" within the meaning of CEMA. RCW 19.190.010(2).

128. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages to electronic mail addresses that

AMENDED CLASS ACTION COMPLAINT
Page 17

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

Defendant knew, or had reason to know, were held by Washington residents.

129. Defendant initiated the transmission, conspired with another to initiate the transmission, or assisted the transmission of such messages that contained false or misleading information in the subject line, as described herein, in violation of CEMA. RCW 19.190.020(1)(b).

130. For Defendant's violation of the CPA, Plaintiff and putative members are entitled to an injunction against further violations; the greater of Plaintiff's actual damages or liquidated damages of $500 per violation, trebled; and costs of the suit, including a reasonable attorney's fee.

## VII.   JURY DEMAND

131. Plaintiff will demand a jury trial by separate document in accordance with Local Civil Rule 38(b).

## VIII.   PRAYER FOR RELIEF

Plaintiff asks that the Court:

A. Certify the proposed Class, appoint Plaintiff as Class representative, and appoint undersigned counsel as Class counsel;

B. Enter a judgment in Plaintiff's and the Class's favor permanently enjoining Defendant from the unlawful conduct alleged;

C. Enter a judgment in Plaintiff's and the Class's favor awarding actual or liquidated damages, trebled, according to proof;

D. Award Plaintiff's costs of suit, including reasonable attorneys' fees; and

E. Order such further relief the Court finds appropriate.

*[Counsel signature block to follow on next page.]*

AMENDED CLASS ACTION COMPLAINT
Page 18

**STRAUSS BORRELLI PLLC**
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com

DATE: December 11, 2025

Respectfully submitted,

/s/ *Samuel J. Strauss*
Samuel J. Strauss WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile:  (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Lynn A. Toops (*pro hac vice*)
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

J. Gerard Stranch, IV*
Michael C. Tackeff (*pro hac vice*)
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com

*Attorneys for Plaintiff*

**\* Applications for admission *pro hac vice* forthcoming**

AMENDED CLASS ACTION COMPLAINT
Page 19

# CERTIFICATE OF SERVICE

I, Samuel J. Strauss, hereby certify that on December 11, 2025, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATE: December 11, 2025

Respectfully submitted,

/s/ *Samuel J. Strauss*
Samuel J. Strauss WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile:  (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

AMENDED CLASS ACTION COMPLAINT
Page 20

STRAUSS BORRELLI PLLC
980 North Michigan Ave., Suite 1610
Chicago, Illinois 60611
TEL. 872.263.1100 • FAX 872.263.1109
straussborrelli.com