The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COLBY HUTTON, on his own behalf and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>THE REINALT-THOMAS CORPORATION,<br><br>               Defendant. | No. 2:25-cv-02008-TL<br><br>DEFENDANT THE REINALT THOMAS CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT<br><br>NOTE ON MOTION CALENDAR:<br>March 6, 2026[1] |

_____

[1] Based on briefing schedule set under the Parties' Stipulated Order. *See* Dkts. 25, 26.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## <u>TABLE OF CONTENTS</u>

2    I.    INTRODUCTION .................................................................................................1

3    II.   FACTUAL ALLEGATIONS .............................................................................2

4    III.  LEGAL STANDARDS ......................................................................................4

5          A.    Rule 12(b)(6) Motion to Dismiss..............................................................4

6          B.    The Commercial Electronic Mail Act.......................................................4

7    IV.   ARGUMENT.....................................................................................................5

8          A.    Plaintiff Fails to Allege a CEMA Violation. ...........................................5

9                1.    Plaintiff Does Not Allege He Received All Emails....................5

10               2.    The Email Subject Lines that Plaintiff Received Are True. .......5

11
12               3.    Plaintiff Does Not Adequately Allege Discount Tire Knew or Had
                        Reason to Know Plaintiff Resided in Washington. ...................8

13         B.    CEMA Violates the Dormant Commerce Clause. ....................................9

14
15               1.    CEMA Impermissibly Applies to Conduct Occurring Wholly
                        Outside of Washington State. ...................................................10

16               2.    The Washington Supreme Court Tacitly Acknowledged CEMA
17                      Cannot Prohibit Wholly Out of State Conduct. ........................12

18               3.    CEMA Is Invalid As Applied. ..................................................13

19               4.    CEMA Is Facially Invalid..........................................................14

20         C.    CEMA Excessively Burdens Interstate Commerce. ...............................15

21         D.    CAN-SPAM Preempts CEMA. ..............................................................16

22               1.    CAN-SPAM Preempts CEMA in its Entirety............................16

23               2.    CAN-SPAM Preempts Plaintiff's Broad Application of CEMA. .............18

24         E.    Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the
25               CPA Claim That Relies on It. .................................................................23

26         F.    Actual and Treble Damages Are Not Available. ....................................24

27    V.    CONCLUSION................................................................................................24

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – i

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

## TABLE OF AUTHORITIES

Page(s)

3

**Federal Cases**

4

*Am. Librs. Ass'n v. Pataki*,
   969 F. Supp. 160 (S.D.N.Y. 1997) .......................................................................................11

5

6

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................4, 9

7

8

*Asis Internet Servs. v. Subscriberbase Inc.*,
   2010 WL 1267763 (N.D. Cal. Apr. 1, 2010) ........................................................................17

9

*Ass'n for Accessible Meds. v. Bonta*,
   766 F. Supp. 3d 1020 (E.D. Cal. 2025)................................................................................14

10

11

*Beyond Sys., Inc. v. Kraft Foods, Inc.*,
   777 F.3d 712 (4th Cir. 2015) ................................................................................................16

12

13

*Booth v. Appstack, Inc.*,
   2015 WL 1466247 (W.D. Wash. Mar. 30, 2015) ..................................................................11

14

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
   2011 WL 3471476 (W.D. Wash Aug. 8, 2011) ......................................................................19

15

16

*Chen v. Sur La Table, Inc.*,
   655 F. Supp. 3d 1082 (W.D. Wash. 2023)............................................................................23

17

18

*Coto Settlement v. Eisenberg*,
   593 F.3d 1031 (9th Cir. 2010) ................................................................................................3

19

*Daniels Sharpsmart, Inc. v. Smith*,
   889 F.3d 608 (9th Cir. 2018) ..................................................................................................9

20

21

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ..................................................................................................7

22

23

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982)..............................................................................................................14

24

*Gordon v. Impulse Mktg. Grp., Inc.*,
   375 F. Supp. 2d 1040 (E.D. Wash. 2005) .............................................................................18

25

26

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) ........................................................................................ *passim*

27

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – ii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*,
  2025 WL 81384 (W.D. Wash. Jan. 13, 2025)...........................................................................24

*Gutierrez v. Converse Inc.*,
  2024 WL 2106952 (C.D. Cal. May 2, 2024) .............................................................................8

*Harrington v. Vineyard Vines, LLC*,
  2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ...........................................................18, 19

*Hartman v. United Bank Card, Inc.*,
  291 F.R.D. 591 (W.D. Wash. 2013) ........................................................................................11

*Healy v. Beer Inst., Inc.*,
  491 U.S. 324 (1989).............................................................................................1, 9, 10, 16

*Hendrix ex rel. United States v. J-M Mfg. Co.*,
  76 F.4th 1164 (9th Cir. 2023) .................................................................................................22

*In re Hawaiian & Guamanian Cabotage Antitrust Litig.*,
  754 F. Supp. 2d 1239 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011)................4

*Integra Med Analytics LLC v. Providence Health & Servs.*,
  854 F. App'x 840 (9th Cir. 2021) .............................................................................................7

*Leonard v. McMenamins Inc.*,
  2024 WL 4188974 (W.D. Wash. Sep. 13, 2024)....................................................................23

*Ma v. Nike*,
  2026 WL 100731 (W.D. Wash. Jan. 14, 2026)........................................................................18

*Malibu Media, LLC v. Doe*,
  2014 WL 2615351 (S.D. Fla. May 21, 2014) ...........................................................................9

*Martin v. CCH, Inc.*,
  784 F. Supp. 2d 1000 (N.D. Ill. 2011) ...................................................................................18

*Moss v. U.S. Secret Serv.*,
  572 F.3d 962 (9th Cir. 2009) ....................................................................................................6

*Nat'l Collegiate Athletic Ass'n v. Miller*,
  10 F.3d 633 (9th Cir. 1993) ....................................................................................................15

*Nat'l Pork Producers Council v. Ross*,
  598 U.S. 356 (2023)..........................................................................................................10, 14

*Nat'l Shooting Sports Found. v. Bonta*,
  718 F. Supp. 3d 1244 (S.D. Cal. 2024), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal.
  Mar. 31, 2025).........................................................................................................................14

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – iii

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Newcal Indus., Inc. v. Ikon Off. Sol.*,
   513 F.3d 1038 (9th Cir. 2008) ...................................................................................7

*Paris v. Steinberg & Steinberg*,
   828 F. Supp. 2d 1212 (W.D. Wash. 2011)................................................................24

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970)..................................................................................................15

*Prudencio v. Midway Importing, Inc.*,
   831 F. App'x 808 (9th Cir. 2020) ...............................................................................7

*Publius v. Boyer-Vine*,
   237 F. Supp. 3d 997 (E.D. Cal. 2017)......................................................................11

*Rocky Mountain Farmers Union v. Corey*,
   730 F.3d 1070 (9th Cir. 2013) .................................................................................10

*S.D. Myers, Inc. v. City & Cnty. of S.F.*,
   253 F.3d 461 (9th Cir. 2001) ...................................................................................14

*Sam Francis Found. v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) ...............................................................10, 12, 14

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) .....4

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
   538 U.S. 408 (2003)....................................................................................................9

*Thompson v. United States*,
   604 U.S. 408 (2025)..................................................................................................19

*United States v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) ...................................................................................24

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) .....................................................................................4

*Wash. State Grange v. Wash. State Republican Party*,
   552 U.S. 442 (2008)..................................................................................................16

*Watson v. Emps. Liab. Assurance Corp.*,
   348 U.S. 66 (1954)......................................................................................................9

*Wilson v. Playtika, Ltd.*,
   349 F. Supp. 3d 1028 (W.D. Wash. 2018)................................................................4

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – iv

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**State Cases**

*Adams v. King County*,
    164 Wn.2d 640 (2008) ...................................................................................21, 23

*Brown v. Old Navy, LLC*,
    4 Wn.3d 580 (2025) ...........................................................................................6, 7

*Brummett v. Wash.'s Lottery*,
    171 Wn. App. 664 (2012) .......................................................................................22

*Elcon Constr., Inc. v. E. Wash. Univ.*,
    174 Wn.2d 157 (2012) ............................................................................................22

*Ferguson v. Friendfinders, Inc.*,
    94 Cal. App. 4th 1255 (2002) ...............................................................................11

*Keodalah v. Allstate Ins. Co.*,
    194 Wn.2d 339 (2019) ............................................................................................23

*Martin v. Miller*,
    24 Wn. App. 306 (1979) .........................................................................................22

*MaryCLE, LLC v. First Choice Internet, Inc.*,
    166 Md. App. 481 (Md. Ct. Spec. App. 2006) .......................................................11

*Mason v. Mortg. Am., Inc.*,
    114 Wn.2d 842 (1990) ............................................................................................24

*Rosolowski v. Guthy-Renker LLC*,
    230 Cal. App. 4th 1403 (2014) ..........................................................................6, 17

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
    64 Wn. App. 553 (1992) .........................................................................................24

*St. Paul Fire & Marine Ins. Co. v. Updegrave*,
    33 Wn. App. 653 (1983) .........................................................................................24

*State v. Heckel*,
    143 Wn.2d 824 (2001) ......................................................................................12, 13

*Wright v. Lyft, Inc.*,
    189 Wn.2d 718 (2017) ..............................................................................................4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**Federal Statutes**

15 U.S.C.
§ 7701(a)(11) ................................................................................................15, 16
§ 7704(a) ..............................................................................................1, 19, 20, 21
§ 7705................................................................................................................19
§ 7706(f)(1)........................................................................................................20
§ 7706(g)(1).......................................................................................................20
§ 7707(b)(1) ...........................................................................................2, 17, 19, 20

**State Statutes**

Revised Code of Washington
§ 19.86 *et seq.* ..................................................................................................5
§ 19.86.090........................................................................................................24
§ 19.190.020............................................................................................... *passim*
§ 19.190.030(1).................................................................................................5
§ 19.190.040(1).............................................................................................5, 24
§ 19.190.100.....................................................................................................5

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................1, 4, 7

**Other Sources**

H.B. 2274, 69th Legis., 2026 Reg. Sess. (Wash. 2026)................................................22

S.B. 5976, 69th Legis., 2026 Reg. Sess. (Wash. 2026) ................................................22

Staff of H. Comm. On Energy & Utilities, Report On House Bill Report HB 2752 (1998)...12, 13

Staff of S. Comm. On Energy & Utilities, Report On Senate Bill 6434 (Comm. Print 1998)......13

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – vi

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# I.    INTRODUCTION

Plaintiff Colby Hutton's First Amended Complaint ("FAC") fails to cure the fatal flaws in his original complaint. Plaintiff brings this action under Washington's Commercial Electronic Mail Act ("CEMA") alleging Defendant The Reinalt-Thomas Corporation—doing business as Discount Tire ("Discount Tire")—sent emails he describes as misleading. But Plaintiff does not allege that he read, opened, or relied upon any of the emails. And Plaintiff does not even allege he received all of the emails identified in the FAC.

Discount Tire seeks dismissal of Plaintiff's claims under Rule 12(b)(6) with prejudice for the following reasons:

***First***, Plaintiff fails to allege any facts to support three crucial elements of a CEMA claim: (a) his receipt of each alleged email, (b) false or misleading subject lines, and (c) Discount Tire's reason to know Plaintiff's email address belonged to a Washington consumer. *See* RCW 19.190.020(1)(b). Plaintiff allegedly received only two of the 22 emails identified in the FAC; the subject lines of the two emails Plaintiff claims he received accurately describe the promotions offered; and Plaintiff alleges no fact indicating Discount Tire knew or had reason to know Plaintiff was a Washington resident.

***Second***, CEMA is unconstitutional as applied and facially, given it both directly controls and excessively burdens interstate commerce. Because Plaintiff fails to allege he was in Washington when he received the emails at issue, applying CEMA here would unconstitutionally "directly control[] commerce occurring wholly outside the boundaries of [Washington] State." *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 336 (1989). And because out-of-state entities cannot feasibly weed out individuals currently located *or* residing in Washington to avoid Washington regulation, CEMA facially creates a de facto nationwide standard for commercial email, unconstitutionally and excessively burdening interstate commerce.

***Third***, CEMA, both in its entirety and as applied here, is preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act ("CAN-SPAM"), which regulates commercial email nationwide. 15 U.S.C. § 7704(a)(1)–(2). CAN-SPAM preempts any state law,

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

such as CEMA, that expressly regulates the same issues, 15 U.S.C. § 7707(b)(1), with a narrow exception for state laws that "prohibit[] falsity or deception" in commercial emails. *Id.* Under Ninth Circuit law, which controls here, CEMA's strict liability framework that focuses solely on an email's subject line, results in its preemption. Moreover, for Plaintiff's claim to survive, he must allege key elements of a traditional tort including materiality, knowledge, or harm to avoid preemption, which he fails to do.

**Fourth**, because Plaintiff's Consumer Protection Act ("CPA") claim rests entirely on his failing CEMA claim, the Court should dismiss both claims.

**Finally**, Plaintiff fails to allege any facts supporting his claims for actual and treble damages under both CEMA and the CPA.

## II.    FACTUAL ALLEGATIONS

Discount Tire is one of America's largest independent tire and wheel retailers, with its principal place of business in Arizona. *See* Dkt. 22 ("FAC") ¶ 11; Dkts. 4, 19. Discount Tire, like many businesses, periodically announces promotions through email marketing. *See generally* FAC. Plaintiff takes issue with this common marketing tactic, speculating that Discount Tire "lur[es] in consumers through urgent subject headings in emails that do not reflect the true availability of the deal itself[.]" *Id.* ¶ 42. Plaintiff identifies two subject lines from emails Discount Tire allegedly sent him, and alleges these emails were false or misleading because Discount Tire subsequently offered a similar promotion:

> June 13, 2025 – "$80 OFF Pirelli tires ends today!"
>
> July 4, 2025 – "Last chance for up to $160 off tires & wheels."

*Id.* ¶¶ 98–101. Plaintiff seeks to represent a class of "Washington citizens" that received these and another nine emails. *Id.* ¶ 103 & Ex. A. However, he does not allege he received any of these other emails.[2]

---

[2] Plaintiff identifies 22 emails in total, 20 of which Plaintiff does not allege he received, and only nine of which he alleges were false or misleading. *Compare id.* ¶¶ 44–87 & Ex. A, *with id.* ¶¶ 98–100.

1    Plaintiff does not deny that the email subject lines were factually accurate—the sales

2   described did, in fact, end on the date identified. *See id.* ¶ 81.[3] Instead, Plaintiff suggests that

3   Discount Tire should be banned from stopping a promotion and then later offering another

4   similar promotion based on business considerations. Specifically here, as to the June 13, 2025

5   email, Plaintiff takes issue with the fact that Discount Tire offered a similar promotion on Pirelli,

6   Bridgestone, and Continental tires a week after the Pirelli-exclusive sale ended. *Id.* ¶ 83. And

7   regarding the July 4, 2025 email, Plaintiff takes issue with Discount Tire ending a promotion and

8   then making the business decision to offer a similar promotion four days later. *Id.* ¶ 86.

9    Under Plaintiff's logic, offering a similar promotion in the future retroactively injures

10   consumers who received the version of the promotion first offered because there was "a false

11   sense of urgency." *Id.* ¶ 4. But fatally missing from the FAC is how the initial email subject lines

12   were false or deceptive ***when sent***.

13    Plaintiff also speculates that Discount Tire knows which email recipients are Washington

14   residents because Discount Tire "may" (i) have "location information tied to email addresses

15   when consumers make purchases from [Discount Tire] through digital platforms," (ii) track IP

16   addresses, (iii) purchase consumer data, or (iv) identify email recipients through marketing

17   platforms. *Id.* ¶¶ 88–96. But Plaintiff does not allege that Discount Tire actually knew or had

18   reason to know he was a Washington resident. And he does not allege that he was in Washington

19   when he allegedly received each of the emails at issue.

20

21

---

22   [3] The end date of each sale is prominently stated in the body of both emails Plaintiff alleges he received,
     further confirming the subject lines accurately advertised the duration of the promotions. Declaration of

23   Lauren Rainwater ("Rainwater Decl.") ¶ 2 & Exs. 1–4. Under the incorporation-by-reference doctrine,
     Discount Tire therefore requests that the Court consider the entirety of the June 13, 2025 and July 4, 2025

24   emails, as well as the two emails that followed them (sent June 20, 2025 and July 8, 2025). *See* FAC
     ¶¶ 82–86; *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) ("We have extended the

25   doctrine of incorporation by reference to consider documents in situations where the complaint
     necessarily relies upon a document or the contents of the document are alleged in a complaint, the

26   document's authenticity is not in question and there are no disputed issues as to the document's
     relevance.").

27

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 3

Plaintiff brings claims for violations of CEMA and the CPA. *Id.* ¶¶ 114–30. Plaintiff seeks to certify a class and seeks an injunction, "actual or liquidated damages, trebled," costs, and attorneys' fees. *Id.* ¶ 103 & Prayer for Relief at 18.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6) Motion to Dismiss

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint can be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim." *In re Hawaiian & Guamanian Cabotage Antitrust Litig.*, 754 F. Supp. 2d 1239, 1244 (W.D. Wash. 2010), *aff'd*, 450 F. App'x 685 (9th Cir. 2011). The Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

On a motion to dismiss, a court may consider materials outside the complaint where the complaint incorporates those materials into the pleading by reference. *Wilson v. Playtika, Ltd.*, 349 F. Supp. 3d 1028, 1041–42 (W.D. Wash. 2018). "Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B.   The Commercial Electronic Mail Act

CEMA is a Washington statute that imposes liability on any "person" who initiates or conspires to initiate the transmission of an email "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that[] … [c]ontains false or misleading information in the subject line." RCW 19.190.020(1)(b). Although CEMA does not authorize a private right of action, *see Wright v.*

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 4

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Lyft, Inc.*, 189 Wn.2d 718, 727 (2017), such a violation is a *per se* violation of the CPA, *see* RCW 19.190.030(1), 19.190.100, 19.86 *et seq*.

## IV.    ARGUMENT

### A.    Plaintiff Fails to Allege a CEMA Violation.

Plaintiff does not allege facts to show: (1) he received nine of the eleven emails on which he purportedly bases his claims; (2) that the remaining two email subject lines he received were false or misleading; or (3) Discount Tire knew or had reason to know Plaintiff was a Washington resident when he received any email. The Court should dismiss Plaintiff's CEMA claim.

#### 1.    Plaintiff Does Not Allege He Received All Emails.

Plaintiff purports to represent a class to whom Discount Tire "sent or caused to be sent any email listed in Exhibit A during the Class Period." FAC ¶ 103. But Plaintiff does not allege he received nine of the eleven emails in Exhibit A. *Compare* FAC ¶¶ 44–87, 98–100, *with* Ex. A. He thus cannot assert CEMA claims based on these emails, *cf.* RCW 19.190.040(1) (providing for "[d]amages to the recipient"), and Discount Tire need not address them further.[4]

#### 2.    The Email Subject Lines that Plaintiff Received Are True.

Plaintiff fails to allege the requisite "false or misleading information" with respect to any of the emails. *See* RCW 19.190.020(1)(b). CEMA applies only to email subject lines. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1058 (9th Cir. 2009). Plaintiff claims the two subject lines for the emails he received advertised time-limited promotions, similar versions of which were advertised at later dates. That is, Plaintiff objects to a June 13, 2025 email containing the subject line "$80 OFF Pirelli tires ends today!" because a similar promotion was advertised on June 20, 2025. FAC ¶¶ 81–83, 99. And Plaintiff takes issue with the July 4, 2025 subject line, "Last chance for up to $160 off tires & wheels," because a comparable promotion was advertised on July 8, 2025. *Id.* ¶¶ 84–86, 100. Plaintiff suggests the June 13 and July 4 emails were false or

---

[4] Plaintiff identifies 11 additional emails in the FAC beyond those in Exhibit A. Those emails suffer from the same deficiencies as the Exhibit A emails.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 5

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  misleading because they "br[oke] the same offer into two distinct promotions," thus "levy[ing]
2  false time pressures against consumers." *Id.* ¶ 81. He is incorrect.

3      ***First***, Plaintiff readily admits that the two at-issue promotions ended as advertised. *See*
4  *id.* Indeed, at no point does he allege that the subject lines were objectively false, i.e., that the
5  promotions were continuously offered between June 13–20 or July 4–8. *See, e.g.*, *id.* ¶ 81
6  (referencing "two distinct promotions"); *id.* ¶ 85. Plaintiff does not even allege the June 13 email
7  was followed by the same sale, as the June 20 subject line announced a promotion involving new
8  tire brands: "$80 OFF tires from Pirelli, ***Bridgestone, & Continental***." *See id.* ¶ 83 (emphasis
9  added). The email bodies confirm the two sales were distinct, showing the June 13 promotion
10  applied to ***all*** tires from ***Pirelli*** only, while the June 20 promotion applied to ***EV*** Pirelli tires, as
11  well as Bridgestone and Continental tires. Rainwater Decl. ¶ 2 & Exs. 1–2; *cf. Rosolowski v.*
12  *Guthy-Renker LLC*, 230 Cal. App. 4th 1403, 1407–08, 1417–18 (2014) (holding email subject
13  lines offering "free gifts" were not misleading because the body of the email "plainly and
14  conspicuously stated the conditional nature of the offer, so that an e-mail recipient, acting
15  reasonably under the circumstances, would not be misled").

16      Plaintiff's case thus rests on the assumption that companies cannot offer similar (yet
17  distinct) sales promotions periodically. This cannot be the law. As Washington's Supreme Court
18  recently clarified, email subject lines do not "retroactively become[] false (and actionable) under
19  CEMA because market conditions change such that a better sale is later available." *Brown v. Old*
20  *Navy, LLC*, 4 Wn.3d 580, 595 (2025). So too, here. Discount Tire's decision to bring back a
21  previously offered deal (or offer a similar yet distinct promotion) does not render the earlier
22  subject lines false or misleading.

23      ***Second***, Plaintiff fails to allege ***any*** facts supporting the claim that the email subject lines
24  were false when made. Plaintiff infers Discount Tire planned to reoffer a promotion when it sent
25  the emails, but he offers no facts in support. And Plaintiff cannot ignore the plausible alternative
26  explanation that Discount Tire either renewed its promotions or otherwise offered similar yet
27  distinct promotions in response to subsequently developed business conditions. *Moss v. U.S.*

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 6

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009) (rejecting allegations as "merely possible" to support "impermissible motive"). "When faced with two possible explanations, only one of which can be true and only one of which results in liability[,] [s]omething more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Prudencio v. Midway Importing, Inc.*, 831 F. App'x 808, 810 (9th Cir. 2020) (internal quotation marks omitted). The Court "need not accept the conclusion that [Discount Tire] engaged in unlawful conduct when its actions are in line with lawful 'rational and competitive business strategy.'" *Integra Med Analytics LLC v. Providence Health & Servs.*, 854 F. App'x 840, 844–45 (9th Cir. 2021) (citation omitted) (dismissing complaint because plaintiff failed to allege facts excluding a competing explanation); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 998–99 (9th Cir. 2014) (same).

**Finally**, with respect to the July 4, 2025 email, the "last chance" language in the subject line is, at best, "mere puffery" or a vague, inactionable assertion. *Brown*, 4 Wn.3d at 596 ("We hold that instances of mere puffery are not prohibited by subsection (1)(b).").[5] A statement like "last chance," FAC ¶ 84, simply relays a "vague or highly subjective term[] that cannot be substantiated[,]" as it does not make concrete statements about the timing of the offer. *See Brown*, 4 Wn.3d at 596.

While Plaintiff does not allege receipt of the remaining emails, his claims with respect to them fail for the same reasons discussed above.

In sum, Plaintiff attempts to extract millions of dollars in statutory damages simply because Discount Tire offered promotions at varying intervals. And he does so based on subject lines that are accurate on their face, speculating that Discount Tire predetermined that it would

---

[5] "[T]he determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." *See Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008).

offer a similar sale at a later date. Because the emails were neither false nor misleading,

Plaintiff's CEMA claim cannot survive.

### 3. Plaintiff Does Not Adequately Allege Discount Tire Knew or Had Reason to Know Plaintiff Resided in Washington.

Despite amending his Complaint after receipt of Discount Tire's initial Motion to

Dismiss, Plaintiff still does not allege Discount Tire knew or had reason to know ***Plaintiff's***

email address belonged to a Washington resident, as required for his CEMA claim. RCW

19.190.020(1) (email must be sent from a computer in Washington or to a Washington resident).[6]

Instead, Plaintiff speculates that Discount Tire should know recipients of its emails are

Washington residents from (i) the "sheer volume" of its email marketing, (ii) customers' online

purchases, (iii) tracking of IP addresses, or (iv) purchasing or requesting such data. FAC ¶¶ 88–

96. This unsupported speculation is not enough to state a claim.

***First***, to assert a CEMA claim, Plaintiff must allege that Discount Tire knew or had

reason to know that ***Plaintiff*** was a Washington resident. RCW 19.190.020. But Plaintiff does

not allege that Discount Tire had any reason to know he was a Washington resident. And he

makes no attempt to tie his conclusory assertion of the "volume" of Discount Tire's emails to ***his***

***own residency***.

***Second***, even assuming that Discount Tire receives IP addresses from online purchases or

opening emails, Plaintiff does not allege ***he*** made any purchase from Discount Tire nor does he

allege that he opened the emails or that the emails went to his primary inbox (as opposed to some

spam folder), let alone while using a Washington IP address. *See generally id.*

***Third***, even if Discount Tire could access Plaintiff's IP addresses through a third party

vendor or other means and link it to his email, courts have repeatedly cast doubt on the reliability

of using IP addresses for geolocation purposes. *See Gutierrez v. Converse Inc.*, 2024 WL

2106952, at *17 (C.D. Cal. May 2, 2024) (providing that IP addresses did not allow defendant

---

[6] Plaintiff does not allege that the emails at issue were sent from a computer located in Washington.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"to make a determination as to where the chat users were located"); *Malibu Media, LLC v. Doe*, 2014 WL 2615351 (S.D. Fla. May 21, 2014) (declining to rely solely on plaintiff's assertions that jurisdiction and venue were appropriate based on a geolocation of the defendant's IP address).

*Finally*, Plaintiff's remaining datapoints reference his speculative and conclusory assertions that Discount Tire "may" purchase or obtain the data through other third-party companies or the email's domain registrant. FAC ¶¶ 92–94. Plaintiff has not plausibly alleged Discount Tire receives or could receive residence data through these means. *See Iqbal*, 556 U.S. at 678 ("[T]he plausibility standard … asks for more than a sheer possibility that a defendant has acted unlawfully."). And Plaintiff has not alleged that any of these third-party sources would have identified *him* as a Washington resident.

Because Plaintiff fails to plausibly allege that Discount Tire knew, or had reason to know, that Plaintiff's email address was held by a Washington resident when the emails were sent, he fails to allege any CEMA violation.

### B.    CEMA Violates the Dormant Commerce Clause.

Even if Plaintiff stated a claim for a CEMA violation, Plaintiff's CEMA claim violates the dormant Commerce Clause—as applied and on its face—because, by imposing liability based solely on the email recipient's residence, it applies to individuals located outside of Washington who received emails from a commercial sender also outside of Washington.

A state may not directly regulate conduct that takes place wholly outside of its borders. *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003), even with "some nexus" to that state. *Daniels Sharpsmart, Inc. v. Smith*, 889 F.3d 608, 615 (9th Cir. 2018). Under the Commerce Clause, states are prohibited from directly "control[ling] commerce occurring wholly outside [its] boundaries." *Healy*, 491 U.S. at 335–36. Such control "exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Id.* at 336. Similarly, the Due Process Clause limits a state's ability to regulate conduct occurring extraterritorially. *See Watson v. Emps. Liab. Assurance Corp.*, 348 U.S. 66, 70 (1954) (recognizing "the due process principle that a state is

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 9

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

without power to exercise 'extra territorial jurisdiction,' that is, to regulate and control activities wholly beyond its boundaries").

In a decision concerning the reach of the dormant Commerce Clause, the U.S. Supreme Court reaffirmed the longstanding principle that laws may not "*directly* regulate[] out-of-state transactions by those with *no* connection to the State." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374, 376 n.1 (2023). "[A] statute that directly controls commerce occurring wholly outside the boundaries of a State exceeds the inherent limits of the enacting State's authority and is invalid regardless of whether the statute's extraterritorial reach was intended by the legislature." *Healy*, 491 U.S. at 336. "States may not mandate compliance with their preferred policies in wholly out-of-state transactions …." *Rocky Mountain Farmers Union v. Corey*, 730 F.3d 1070, 1103 (9th Cir. 2013).

By imposing liability solely on a recipient's Washington residence—but not location—CEMA sweeps in commercial emails in which both the sender and recipient are located outside of Washington state, and is therefore unconstitutional.

### 1. CEMA Impermissibly Applies to Conduct Occurring Wholly Outside of Washington State.

CEMA does not limit its application to companies sending emails ***from*** Washington or emails ***received in*** Washington. Instead, it regulates emails sent "from a computer located in Washington or to an electronic mail address that the sender knows, or has reason to know, is held by a Washington resident …." RCW 19.190.020(1). CEMA thus imposes restrictions on a company incorporated and based in Arizona (like Discount Tire) on its transmission of emails to a person in New York (for example) who is nonetheless a Washington resident. Application of CEMA to these circumstances exceeds the territorial limits of its authority.

In *Sam Francis Found. v. Christies, Inc.*, a California statute regulated art sales where "the seller resides in California *or* the sale takes place in California." 784 F.3d 1320, 1323 (9th Cir. 2015). Because the statute imposed liability based on *residency* of the seller, the Ninth Circuit determined that "the state statute facially regulates a commercial transaction that 'takes

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 10

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

place wholly outside of the State's borders,'" and, thus, violated the dormant Commerce Clause.

*Id.*

The Ninth Circuit further explained:

> [I]f a California resident has a part-time apartment in New York, buys a sculpture in New York from a North Dakota artist to furnish her apartment, and later sells the sculpture to a friend in New York, the Act requires the payment of a royalty to the North Dakota artist—even if the sculpture, the artist, and the buyer never traveled to, or had any connection with, California. We easily conclude that the royalty requirement, as applied to out-of-state sales by California residents, violates the dormant Commerce Clause.

*Id*. at 1323.

The same is true for state statutes that directly regulate communications. In *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591, 599 (W.D. Wash. 2013), this Court declined to interpret the Washington telemarketing statute as applying to calls "that were both initiated and received outside the State of Washington" because such an interpretation would "render the statute unconstitutional by virtue of the dormant Commerce Clause." *See also Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14 (W.D. Wash. Mar. 30, 2015) (same); *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1025 (E.D. Cal. 2017) (plaintiff likely to win dormant Commerce Clause challenge over California statue that prohibited out-of-state party from transferring certain information "even if [plaintiff] and the recipient have no connection to California or the transfer 'takes place wholly outside of the State's borders'"); *Am. Librs. Ass'n v. Pataki*, 969 F. Supp. 160, 163, 169 (S.D.N.Y. 1997) (New York Law that made it illegal to conduct certain communications "represents an unconstitutional projection of New York law into conduct that occurs wholly outside New York").

Conversely, where courts have upheld anti-spam statutes facing constitutional challenges, they have done so only after interpreting those statutes as applying to emails that were sent from or received in the state. *See Ferguson v. Friendfinders, Inc.*, 94 Cal. App. 4th 1255 (2002) (holding that a state law regulating unsolicited email applied only to California residents receiving email through equipment located in California); *MaryCLE, LLC v. First Choice*

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 11

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Internet, Inc.*, 166 Md. App. 481, 525–26 (Md. Ct. Spec. App. 2006) (upholding a law prohibiting emails containing false information to a Maryland email address, as the regulation applied only to emails that used a computer in Maryland or were sent to an address in Maryland).[7]

Further compounding the issue, under CEMA, residency is keyed to whether "information is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address," which may have outdated or inaccurate residency information. *See* RCW 19.190.020(2). In such cases, CEMA purports to directly regulate, for example, the conduct of Discount Tire sending commercial emails to a California resident who created an email address while attending college in Washington twenty years ago.

As applied to emails that are both sent and received wholly outside of Washington's borders, CEMA is therefore unconstitutional.

### 2. The Washington Supreme Court Tacitly Acknowledged CEMA Cannot Prohibit Wholly Out of State Conduct.

Although the Washington Supreme Court rejected a dormant Commerce Clause challenge to CEMA more than two decades ago, in *State v. Heckel*, 143 Wn.2d 824 (2001), that decision is distinguishable. It also acknowledged that applying CEMA to prohibit conduct occurring wholly outside of Washington would pose a "jurisdictional question"—one the court expressly declined to answer. *Id*. at 839.

CEMA was enacted in 1999 and *Heckel* was decided in 2001, when most people received emails at their home computers via dial-up internet, meaning their residence was synonymous with the location at which they received emails. *See* Staff of H. Comm. On Energy & Utilities, Report On House Bill Report HB 2752 (1998) ("Many consumers connect to the Internet through interactive computer services that charge fees for time spent utilizing a ***dial-up connection*** to

---

[7] In the alternative, the Court could sever CEMA's invalid residency language and leave the remainder of the provision, which includes a requirement that the email be sent from a computer located in Washington, intact. *See Sam Francis Found.*, 784 F.3d at 1325–26 (severing residency hook from remainder of California Resale Royalty Act).

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 12

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  their computer server." (emphasis added)).[8] The legislative history reflects that CEMA was

2  intended to apply only to emails either sent to or received from a computer "located in

3  Washington." *See* Staff of S. Comm. On Energy & Utilities, Report On Senate Bill 6434 (Comm.

4  Print 1998) ("Transmissions of unsolicited electronic mail (e-mail) messages *from a computer*

5  *located in Washington* **or** *to a computer located in Washington* …." (emphasis added)).[9] It is

6  through this lens that the *Heckel* court rejected the dormant Commerce Clause challenge on the

7  grounds that "there is no 'sweeping extraterritorial effect.'" *Heckel*, 143 Wn.2d at 838–39

8  (quoting *Edgar v. MITE Corp.*, 457 U.S. 624, 642 (1982)).

9  Moreover, the *Heckel* court did not rule out the possibility that CEMA might violate the

10 dormant Commerce Clause if applied to wholly extraterritorial conduct. Although the court

11 dismissed the mere "hypothetical of a Washington resident who downloads and reads the

12 deceptive spam while in Portland or Denver," it did so because the "hypothetical mistakenly

13 presumes that the Act must be construed to apply to Washington residents when they are out of

14 state, a construction that *creates a jurisdictional question* not at issue in this case." *Id.* at 839

15 (emphasis added). In other words, *Heckel* tacitly acknowledged that if CEMA applies to

16 messages that are sent and received wholly outside of Washington, it could exceed the inherent

17 limits of Washington state's authority.

18                          **3.      CEMA Is Invalid As Applied.**

19 CEMA is invalid as applied because Discount Tire is a Michigan corporation with its

20 principal place of business in Arizona, Dkt. 4, and Plaintiff does not allege that he was *actually*

21 *within* Washington when he received any of the emails at issue or that the emails were *sent from*

22 Washington. Indeed, Plaintiff's FAC is conspicuously silent as to his location at the time he

23 received the challenged emails. As a result, Plaintiff apparently seeks to apply CEMA to prohibit

24 ─────────────

25 [8] Available online at: https://lawfilesext.leg.wa.gov/biennium/1997-
   98/Pdf/Bill%20Reports/House/2752.HBR.pdf?q=20250912085527

26 [9] Available online at: https://lawfilesext.leg.wa.gov/biennium/1997-
   98/Pdf/Bill%20Reports/Senate/6434.SBR.pdf?q=20250916135445

27

an email initiated and received outside of Washington, which would "regulate directly …

commerce wholly outside the State," *Edgar*, 457 U.S. at 643, and thus exceed the "territorial

limits of state authority" under the Constitution and federal caselaw interpreting it, *Nat'l Pork

Producers Council*, 598 U.S. at 376 n.1 (describing *Edgar*). Plaintiff's claim as pleaded therefore

rests on a reading of CEMA that violates the dormant Commerce Clause and should be

dismissed.

### 4.    CEMA Is Facially Invalid.

CEMA is also facially invalid, because, as drafted, "no set of circumstances exists under

which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th

Cir. 2001). On its face, CEMA regulates conduct by a non-Washington company directed toward

a Washington resident, without regard to whether the transaction occurred in Washington. A

statute is not immune to facial attack merely because the "statute *could* be applied to purely in-

state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting

Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1257 (S.D. Cal. 2024), *reconsideration denied*,

2025 WL 1012326 (S.D. Cal. Mar. 31, 2025). Indeed, "by that logic, a state law policing

economic activity *everywhere in the world*—including within the state—would be immune to

facial attack." *Id.*

Rather, like the statute challenged in *Sam Francis Foundation*, CEMA regulates

transactions occurring out of state merely because they involve a Washington resident and

therefore "facially regulates a commercial transaction that 'takes place wholly outside of the

State's borders.'" 784 F.3d at 1323. Although CEMA could be applied to purely in-state

commercial transactions, which a state may constitutionally regulate, the statute as currently

written, relies on a residency hook to regulate commercial transactions, and therefore results in

regulating transactions outside of Washington. CEMA is therefore facially invalid. *See id.*; *see

also Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025)

(invalidating statute that "on its face may result in the extraterritorial regulation of settlement

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 14

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  agreements in which none of the parties, the agreement, or the pharmaceutical sales have any

2  connection with California" and limiting application to in-state settlement agreements).

3        **C.**    **CEMA Excessively Burdens Interstate Commerce.**

4        CEMA independently violates the dormant Commerce Clause by imposing stringent

5  standards regulating commercial emails nationwide contrary to the intent of Congress,

6  excessively burdening interstate commerce. In determining whether to strike down a law on this

7  basis, courts look at (1) whether the state law attempts interstate regulation of a subject of

8  national concern, and (2) the local benefits, if any, of the law. *See Pike v. Bruce Church, Inc.*,

9  397 U.S. 137, 142 (1970). Under both factors, CEMA cannot survive.

10        Congress rendered commercial email an issue of national concern by passing CAN-

11  SPAM. *See* 15 U.S.C. § 7701(a)(11) (expressing concern that "since an electronic mail address

12  does not specify a geographic location, it can be extremely difficult for law-abiding businesses to

13  know with which of these disparate statutes they are required to comply."). CEMA's disparate

14  requirements for commercial emails effectively forces out-of-state businesses to assume

15  CEMA's standards apply to each email they send, violating the Commerce Clause. *See Nat'l*

16  *Collegiate Athletic Ass'n v. Miller*, 10 F.3d 633, 639 (9th Cir. 1993) (finding statute

17  unconstitutional under the dormant Commerce Clause where it would force the plaintiff to adopt

18  Nevada's regulations for use in all states).

19        Although CEMA limits its application to email addresses that "*the sender knows, or has*

20  *reason to know*, [are] held by a Washington resident," RCW 19.190.020(1) (emphasis added),

21  the statute defines "knows" to require out-of-state business to ascertain residency by contacting

22  "the registrant of the internet domain name contained in the recipient's electronic mail address."

23  RCW 19.190.020(2). Requiring businesses to contact an email registrar to ascertain the residency

24  for each email before sending marketing emails is an onerous burden that cannot be dismissed as

25

26

27

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

a "burden of noncompliance."[10] This is the type of burden CAN-SPAM sought to avoid. *See* 15 U.S.C. § 7701(a)(11).

Additionally, Washington's local interest in independently regulating misleading email subject lines is comparatively minimal against the backdrop of an existing federal standard addressing the same conduct. While Washington may have a legitimate interest in regulating such conduct within its borders, the legislature could draft a narrowed statute encompassing emails sent from "a computer located in Washington or to" a computer "that the sender knows, or has reason to know," *is located in* Washington. *Contra* RCW 19.190.020(1).

Instead, Discount Tire may be forced to apply CEMA's restrictions nationwide in order to comply. This is the very "projection of one state regulatory regime into the jurisdiction of another State" that the dormant Commerce Clause protects against. *Healy*, 491 U.S. at 337. As such, CEMA is facially invalid under the dormant Commerce Clause. *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008) (holding that a statute is facially invalid where, as here, "a substantial number of its applications are unconstitutional, judged in relation to [its] plainly legitimate sweep" (citation modified)).

## D. CAN-SPAM Preempts CEMA.

### 1. CAN-SPAM Preempts CEMA in its Entirety.

Over 20 years ago, Congress enacted CAN-SPAM with the express purpose of "creat[ing] a national uniform standard regarding spam control." *Beyond Sys., Inc. v. Kraft Foods, Inc.*, 777 F.3d 712, 717 (4th Cir. 2015) (citing 15 U.S.C.§ 7701(a)(11)). Congress recognized that businesses faced numerous "disparate" state statutes targeting spam, such as CEMA, that "impose[d] different standards and requirements." 15 U.S.C. § 7701(a)(11). Because email addresses do "not specify a [recipient's] geographic location," it is "extremely difficult" for businesses like Discount Tire to both identify and comply with a specific state's laws. *Id.* In

---

[10] While CEMA defines the word "knows" it does not define "reason to know" as used in RCW 19.190.020. This ignores the realities of modern email marketing and further compounds the difficulties imposed on national businesses.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

place of the former "patchwork" of disparate state statutes, CAN-SPAM created a comprehensive "code of conduct to regulate commercial e-mail messaging practices," and "broadly preempt[ed] state regulation of commercial e-mail with limited, narrow exception." *Gordon v. Virtumundo*, 575 F.3d 1040, 1048 (9th Cir. 2009). CAN-SPAM excepts from preemption only state laws that "prohibit[] falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). Considering CAN-SPAM's "text, structure, and legislative purpose," it is clear, as the Ninth Circuit announced, CAN-SPAM's aim was to "save from preemption only 'statutes, regulations, or rules that target *fraud or deception*.'" *Virtumundo*, 575 F.3d at 1061–62. It was not designed to protect state laws aimed at penalizing emails with "at best, 'incomplete' or less than comprehensive information" or "technical" violations. *Id.* at 1064.

Under this framework, CEMA cannot stand. CEMA is a strict liability statute imposing liability based solely on an email's subject line. CEMA, as the Washington State Supreme Court reinforced, does not consider the body of the email. *Brown*, 4 Wn.3d at 592. This myopic view ignores the body of the email which in most cases provides additional context that eliminates any potential falsity or deception. For example, a subject line reading "Time is Running Out for 20% Off" could be challenged as false or misleading if the sale were to last for longer than the consumer believed the subject line implied. But if the body of the email explained the sale would last for an additional three days, there is no ambiguity, falsity, or deception. CEMA's imposition of liability on these types of subject lines that are, at most, incomplete, flies in the face of CAN-SPAM's intended goal and results in preemption. For this reason, similar statutes in other jurisdictions consider the email in its entirety—not just the subject line. *See, e.g.*, *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *5 (N.D. Cal. Apr. 1, 2010) ("A finder of fact may therefore reasonably consider the body of an email or a hyperlinked page in determining whether misrepresentations in the subject lines were actually material."); *Rosolowski*, 230 Cal. App. 4th at 1418 ("[W]e view an e-mail's subject line in conjunction with the body of the e-mail, rather than in isolation. We conclude the subject lines' offers of free gifts

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 17

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

were not likely to mislead a recipient, acting reasonably under the circumstances, about a material fact, because the e-mail advertisements made it clear that a free gift was conditional upon a purchase." (citation omitted)); *Martin v. CCH, Inc*., 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011) (allegations of "less than comprehensive information outside the body of an e-mail is at best a technical allegation that finds no basis in traditional tort theories and thus falls within CAN-SPAM's express preemption clause (and outside the exception)"). A subject line, by its nature, is limited. It cannot—and is not designed to—provide the level of detail contained in an email body. CEMA's penalization of email subject lines containing incomplete information results in preemption.

### 2.    CAN-SPAM Preempts Plaintiff's Broad Application of CEMA.

Even if CEMA was not preempted in its entirety, Plaintiff's CEMA claim fails for the additional reason that CEMA, as applied here, is preempted.

### a.    *Virtumundo* Applies Here.

Two recent orders in this District held that CAN-SPAM does not preempt the subject-line provision of CEMA. *See Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, at *1 (W.D. Wash. Dec. 18, 2025); *Ma v. Nike*, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026). Respectfully, these decisions fail to accord proper weight to the Ninth Circuit's decision in *Virtumundo*. Both decisions incorrectly conclude that *Virtumundo*'s preemption analysis—which held that CAN-SPAM preempted a claim brought under Subsection 1(a) of CEMA—can be disregarded because it was focused on a different section of CEMA, which prohibits email header information that "misrepresents or obscures." RCW 19.190.020(1)(a).[11] But *Virtumundo*'s holding does not limit preemption to Subsection (1)(a) as the recent decisions suggest. The Ninth Circuit looked at

---

[11] In holding CEMA's subject-line provision is not preempted by CAN-SPAM, the *Harrington* court followed the outdated, text-only analysis from *Gordon v. Impulse Mktg. Grp., Inc.*, 375 F. Supp. 2d 1040 (E.D. Wash. 2005). *See* 2025 WL 3677479, at *1. But the *Virtumundo* court rejected that analysis and attendant holding that Subsections 1(a) and 1(b) were not preempted, instead requiring additional scrutiny of the underlying allegations, and holding Subsection 1(a) was preempted ***based on the claims alleged***. 575 F.3d at 1059, 1063–64.

CEMA in its entirety, discussing both deceptive subject lines and materially false and misleading header information. *Virtumundo*, 575 F.3d at 1062. It recognized "misrepresent"—the standard used in Subsection 1(a)—is so broad as to "extend CEMA's [] reach" to a "vast array of non-deceptive acts and practices." *Id.* at 1059. For that reason, the court held Subsection 1(a) was preempted.

The same logic applies to Subsection 1(b). It prohibits subject lines that are "misleading." Like the word "misrepresent," the word "mislead" reaches email subject lines that are neither false nor deceptive. *See*, *e.g.*, *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 3471476, at *4 (W.D. Wash Aug. 8, 2011) ("When an advertisement is not literally false, but is misleading, 'proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical.'"); *see also Thompson v. United States*, 604 U.S. 408, 413 (2025) ("[F]alse and misleading are two different things. … [B]asic logic dictates that at least some misleading statements are not false.").

CAN-SPAM's statutory framework supports this distinction. Congress used the terms "false," "misleading," and "deceptive" separately and distinctly throughout CAN-SPAM. *See, e.g.*, 15 U.S.C. § 7701(a)(2), (8) (separately describing "fraudulent or deceptive" messages and messages with "misleading information in the … subject lines"); *id.* § 7704(a)(1) ("Prohibition of false or misleading transmission information"); *id.* § 7704(a)(2) ("Prohibition of deceptive subject headings"); *id.* § 7705 ("Businesses knowingly promoted by electronic mail with false or misleading transmission information"). And Congress chose ***not*** to include "misleading" in CAN-SPAM's savings clause. *Id.* § 7707(b)(1) (saving only state laws "prohibit[ing] falsity or deception"). "False/falsity," "deception," and "misleading" thus cannot be viewed as synonymous, an assumption both the *Harrington* and *Harrison* courts made that is fatal to their rulings.

Here, to the extent the email subject lines run afoul of CEMA (they do not), unlike the emails addressed in *Harrington* and *Harrison,* they cannot be characterized as deceptive or literally false. At most, the emails Discount Tire sent could be construed as misleading or

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 19

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"giv[ing] a wrong impression." *Mislead*, Merriam Webster, https://www.merriam-webster.com/dictionary/mislead (last accessed Jan. 20, 2026). As the Ninth Circuit determined in *Virtumundo*, words—like misleading—that could "extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices" render this claim preempted. *Id.* at 1059.

### b.    Under Binding Ninth Circuit Law, CAN-SPAM Preempts Strict Liability Claims like Plaintiff's.

Regardless of whether *Virtumundo*'s conclusion applies equally to both subsections of CEMA, the Ninth Circuit's construction of CAN-SPAM's preemption clause is binding precedent. CAN-SPAM's narrow preemption exception allows states to regulate only "falsity or deception" in email subject lines. 15 U.S.C. § 7707(b)(1). In *Virtumundo*, the Ninth Circuit grappled with the meaning of this preemption exception. It sought to preserve Congress's twin aims: (1) "to regulate commercial e-mail 'on a nationwide basis,'" and (2) "to save from preemption only 'statutes, regulations, or rules that target *fraud or deception*.'" 575 F.3d at 1061–62. For that reason, the Ninth Circuit recognized "[i]t would be logically incongruous to conclude that Congress endeavored to erect a uniform standard but simultaneously left states and local lawmakers free to manipulate that standard to create more burdensome regulation." *Id.* at 1063. To determine whether a state law is more burdensome than CAN-SPAM, the Ninth Circuit began by looking at what CAN-SPAM requires. *Id.* To allege a CAN-SPAM violation for "deceptive subject headings," a party must—at a minimum—allege the sender (1) had "actual knowledge, or knowledge fairly implied on the basis of objective circumstances" that the statement at issue would be "likely to mislead a recipient, acting reasonably under the circumstances" about (2) "a material fact." 15 U.S.C. § 7704(a)(2) ("Prohibition of deceptive subject headings"). And for any violation of CAN-SPAM, a private litigant must allege that (3) the email "adversely affected" the recipient. *Virtumundo*, 575 F.3d at 1054 & n.12*; cf.* 15 U.S.C. § 7706(f)(1), (g)(1). With this backdrop in mind, the Ninth Circuit went on to explain that to avoid preemption, a state law must—at a minimum—require proof of these same elements.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 20

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Stated differently, a state law claim must advance certain elements of "traditional tort theories such as claims arising from fraud or deception," or at least consistent with those required to assert a claim under CAN-SPAM for "deceptive subject line headings." *Virtumundo*, 575 F.3d at 1062–63.

Plaintiff's claims "find no basis in traditional tort theories." *Id.* at 1064. To allow a claim like Plaintiff's to proceed under CEMA without, at a minimum, alleging these basic elements CAN-SPAM requires would improperly allow Washington to create a more burdensome, strict liability scheme for commercial entities. Plaintiff's inability to allege knowledge, materiality, or an adverse effect is an inability to allege "deception or falsity" and cannot survive CAN-SPAM preemption.

### (1)    Plaintiff Cannot Allege Knowledge.

CAN-SPAM requires a sender to have "***actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient.***" 15 U.S.C. § 7704(a)(2) (emphasis added). It would be "incongruous" to allow a claim under CEMA without these basic allegations. *See Virtumundo*, 575 F.3d at 1063. Plaintiff must allege Discount Tire knew the subject lines were false or misleading when it sent the emails. *Adams v. King County*, 164 Wn.2d 640, 662 (2008). As explained above, Plaintiff fails to do so.

Just as in *Virtumundo*, Plaintiff does not allege that Discount Tire's "practice is aimed at misleading recipients," let alone that it knew the subject lines would be likely to mislead a reasonable recipient. 575 F.3d at 1064.

### (2)    Plaintiff Cannot Allege Materiality.

CAN-SPAM also imposes a materiality component. *Virtumundo*, 575 F.3d at 1062 (requiring more than "immaterial inaccuracies or omissions"). As the Ninth Circuit has held, any broader construction would "create 'an exception to preemption that swallows the rule and undermines the regulatory balance that Congress established.'" *Id.* at 1063 (alterations omitted) (quoting *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 21

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

2006)).[12] And not only must the subject lines be material generally, they must have been material to *Plaintiff*. Plaintiff does not and cannot allege either.

**First**, Plaintiff fails to allege the subject lines were false or deceptive, let alone **materially** so. As explained, the subject lines, *at most*, could be creatively misconstrued as creating some "sense of urgency in consumers' minds," FAC ¶ 4, but such a tortured interpretation would at most amount to a mere technically misleading statement, precisely the kind of technical violation CAN-SPAM was enacted to prevent. Indeed, under Washington law, "possible representations about the speed of sale, even if false, [are] not material" where other aspects of the sale are not in question. *Brummett v. Wash.'s Lottery*, 171 Wn. App. 664, 676 (2012) (affirming grant of summary judgment on fraud claim based on allegation that "advertisements 'induce[d] the public to purchase tickets'").

**Second**, for Plaintiff's claims to survive, he must, at a minimum, demonstrate that the allegedly false or misleading subject lines were material **to him**. *Elcon Constr., Inc. v. E. Wash. Univ.*, 174 Wn.2d 157, 167 (2012) (materiality absent because alleged misstatements were not material **to the plaintiff**); *Martin v. Miller*, 24 Wn. App. 306, 309 (1979) (analyzing whether "representations were **material to the plaintiffs' decision** to enter into a purchase and marketing agreement with the defendant" (emphasis added)); *Hendrix ex rel. United States v. J-M Mfg. Co.*, 76 F.4th 1164, 1169, 1173 n.5 (9th Cir. 2023) (similar); *Brummett*, 171 Wn. App. at 678 (advertisement claiming tickets were "going fast" was not "something of material importance" (citation modified)). He does not.

Even after amending his complaint, Plaintiff still does not allege that he read the subject lines and was induced to make a purchase. Instead, he alleges a hypothetical consumer who reads

---

[12] Even Washington's legislature recognizes CEMA is too broad. In the 2026 legislative session, Senate Bill 5976 and House Bill 2274 were introduced to require plaintiffs to receive, review, and detrimentally rely on materially misleading subject lines before they can recover under CEMA. *See* S.B. 5976, 69th Legis., 2026 Reg. Sess. (Wash. 2026), https://app.leg.wa.gov/billsummary/?BillNumber=5976&Year=2025&Initiative=false; H.B. 2274, 69th Legis., 2026 Reg. Sess. (Wash. 2026), https://app.leg.wa.gov/BillSummary/?BillNumber=2274&Chamber=House&Year=2025.

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 22

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the email subject line might be "entice[d] … to engage with [Discount Tire's] marketing efforts" based on the "fear of missing out." FAC ¶ 5. This is insufficient to allege materiality as to Plaintiff.

### (3)    Plaintiff Cannot Allege Any Adverse Effect.

Finally, for a private right of action under CAN-SPAM, the statute requires "a showing that the identified concerns are linked in some meaningful way to unwanted spam and, in turn, represent ***actual harm***," i.e., an adverse effect. *Virtumundo*, 575 F.3d. at 1054 (emphasis added). Plaintiff still does not plead that he suffered actual harm or cognizable damages. Instead, he alleges that receipt of the email alone constitutes an injury, without alleging that he read or opened the emails. But merely receiving a misleading email does not "represent actual harm." *See id*.

Similarly, at common law, tort claims generally require some "cognizable injury [that] could have resulted from" the challenged conduct. *Leonard v. McMenamins Inc.*, 2024 WL 4188974, at *10 (W.D. Wash. Sep. 13, 2024) (dismissing breach of fiduciary duty and negligence claims relating to data breach where plaintiff failed to show actual damages); *Adams*, 164 Wn.2d at 662 (requiring "damages suffered by the plaintiff" to establish a fraud claim). By asserting a claim without any allegation of injury, Plaintiff seeks to use CEMA to impose a strict liability schedule for sending commercial emails, which is grossly incongruous with CAN-SPAM.

### E.    Because Plaintiff's CEMA Claim Fails, the Court Should Dismiss the CPA Claim That Relies on It.

Finally, because Plaintiff's CEMA claim fails, the Court should dismiss Plaintiff's claim under the CPA.

Plaintiff does not allege any of the five required elements of an independent CPA claim. *See Keodalah v. Allstate Ins. Co.*, 194 Wn.2d 339, 349–50 (2019). Instead, he predicates his CPA claim on the alleged CEMA violation. *See* FAC ¶¶ 121–30. Because Plaintiff fails to allege a CEMA violation, his CPA claim also fails. *See, e.g.*, *Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1 1082, 1093 (W.D. Wash. 2023) (CPA claim properly dismissed where plaintiff failed to state
2 CEMA violation); *Virtumundo*, 575 F.3d at 1065–66 (same).

3    **F. Actual and Treble Damages Are Not Available.**

4    CEMA provides for statutory damages or actual damages, whichever are greater.
5 RCW 19.190.040(1); RCW 19.86.090. Although Plaintiff seeks both statutory and actual
6 damages (trebled), he fails to allege ***any*** facts suggesting that he sustained actual damages.
7 Accordingly, any claim for actual damages should be dismissed. *See Grizzly Gen. Contractors*
8 *Corp. v. Kitsap Pub. Health Dist.*, 2025 WL 81384, at \*7 (W.D. Wash. Jan. 13, 2025) (complaint
9 "is nothing more than a 'formulaic recitation' of the elements of a CPA [claim] devoid of any
10 factual fodder. Its failure to … allege how it was injured … is fatal to [the] claim."); *see also*
11 *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011) (dismissing
12 CPA claim because the complaint "pa[id] only lip-service to damages" and "lack[ed] any factual
13 allegations that would support a finding of actual damages").

14    "The case law is clear that treble damages may only be based upon actual damages."
15 *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992); *see also*
16 *Mason v. Mortg. Am., Inc.*, 114 Wn.2d 842, 855 (1990) ("treble damages [under the CPA] are
17 based upon 'actual' damages awarded"); *St. Paul Fire & Marine Ins. Co. v. Updegrave*, 33 Wn.
18 App. 653, 660 (1983) (same). The Court should also dismiss his request for treble damages.

19         **V. CONCLUSION**

20    For the reasons outlined above, the Court should dismiss the FAC with prejudice, as
21 Plaintiff cannot cure the fundamental defects in his claims, and he has already amended the
22 complaint once in response to the initial motion to dismiss raising substantially similar
23 arguments. *See United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011).

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    DATED this 22nd day of January, 2026.

2                                    Davis Wright Tremaine LLP
                                     ***Attorneys for The Reinalt-Thomas***
3                                    ***Corporation***

4                                    By *s/ Lauren B. Rainwater*
                                         Lauren B. Rainwater, WSBA #43625
5                                        Rachel Herd, WSBA #50339
                                         Caitlyn Courtney, WSBA #62344
6                                        Joshua Peck, WSBA #64328
                                         920 Fifth Avenue, Suite 3300
7                                        Seattle, WA 98104-1610
                                         Telephone: 206-622-3150
8                                        E-mail: laurenrainwater@dwt.com
                                         E-mail: rachelherd@dwt.com
9                                        E-mail: caitlyncourtney@dwt.com
                                         E-mail: joshpeck@dwt.com
10

11                                   *I certify that this memorandum contains 8,348*
                                     *words, in compliance with the Local Civil Rules.*
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL) – 25

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## CERTIFICATE OF CONFERRAL

I certify that on January 20, 2026, I met and conferred with counsel for Plaintiff Colby Hutton regarding the relief sought in this Motion. Plaintiff is opposed.

*s/ Lauren B. Rainwater*
Lauren B. Rainwater, WSBA #43625

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax