The Honorable Tana Lin

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COLBY HUTTON, on his own behalf and on behalf of others similarly situated,

　　　　　　　Plaintiff,

　　and

STATE OF WASHINGTON,

　　　　　　　Plaintiff-Intervenor,

　　v.

THE REINALT-THOMAS CORPORATION,

　　　　　　　Defendant.

NO. 2:25-cv-02008-TL

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE IN OPPOSITION TO DEFENDANT THE REINALT-THOMAS CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Note for Motion Calendar:
April 6, 2026

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................................ 1

II.   BACKGROUND ............................................................................................................. 2

III.  ARGUMENT .................................................................................................................. 3

      A.  CEMA Does Not Violate the Dormant Commerce Clause ...................................... 3

      B.  CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject
          Lines ........................................................................................................................ 6

          1.  CAN-SPAM exempts consumer protection statutes like CEMA ...................... 7

          2.  A plaintiff need not plead common law tort elements to avoid preemption ...... 9

          3.  The terms "deception" and "misleading" are harmonious ............................... 13

IV.   CONCLUSION ............................................................................................................. 16

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - i
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## TABLE OF AUTHORITIES

### <u>Cases</u>

*Agnew v. Macys Retail Holdings LLC*,
No. 2:25-CV-02006-JHC, 2026 WL 764140 (Mar. 18, 2026) ................................................. 1

*Am. Apparel & Footwear Ass'n, Inc. v. Baden*,
107 F.4th 934 (9th Cir. 2024) ................................................................................................. 8

*Asis Internet Servs. v. Member Source Media, LLC*,
No. C-08-1321 EMC, 2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) ............................... 11–12

*Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*,
486 U.S. 888 (1988)................................................................................................................ 5

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025) ..................................................................................................... 11

*Brummet v. Washington's Lottery*,
288 P.3d 48 (Wash. Ct. App. 2012)....................................................................................... 12

*Conway v. Taylor's Executor*,
1 Black 603, 66 U.S. 603 (1862) ............................................................................................ 5

*Edgar v. MITE Corp.*,
457 U.S. 624 (1982)................................................................................................................ 5

*Elcon Const., Inc. v. E. Washington Univ.*,
174 Wn. 2d 157, 273 P.3d 965 (2012).................................................................................. 11

*F.T.C. v. Stefanchik*,
559 F.3d 924 (9th Cir. 2009) ................................................................................................ 15

*Flynt v. Bonta*,
131 F.4th 918 (9th Cir. 2025) ................................................................................................. 5

*Gordon v. Virtumundo, Inc.*,
575 F.3d 1040 (9th Cir. 2009) ..................................................................................... 6, 9–10

*Harrington v. Vineyard Vines, LLC*,
No. C25-1115 TSZ, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ............... 1, 2, 9, 11, 13

*Hendrix ex rel. United States v. J-M Mfg. Co., Inc.*,
76 F.4th 1164 (9th Cir. 2023) .............................................................................................. 11

*Hickey v. Voxernet LLC*,
887 F. Supp. 2d 1125 (W.D. Wash. 2012) .............................................................................. 6

*Hill v. Colorado*,
530 U.S. 703 (2000)................................................................................................................ 4

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - ii
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Hoang v. Reunion.com, Inc.*,
No. C-08-3518 MMC, 2010 WL 1340535 (N.D. Cal. Mar. 31, 2010) ................................ 12

*Hypertouch Inc. v. ValueClick, Inc.*,
123 Cal. Rptr. 3d 8 (Cal. Ct. App. 2011) ............................................................ 8, 13

*Isomedia, Inc. v. Spectrum Direct, Inc.*,
No. C08-1733JLR, 2009 WL 10676391 (W.D. Wash. May 27, 2009) ................................ 11

*Jerde v. Bylt*,
No. 2:25-CV-01496-JHC, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026) ........................... 1

*Keithly v. Intelius Inc.*,
764 F. Supp. 2d 1257 (W.D. Wash. 2011) ........................................................... 12

*Kempf v. FullBeauty Brands Operations LLC*,
No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026) .................. 1, 4, 9, 11, 13

*Ma v. Nike, Inc.*,
No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026) ........................ 1, 9, 11, 13

*Martin v. CCH, Inc.*,
784 F. Supp. 2d 1000 (N.D. Ill. 2011) ............................................................ 12–13

*Martin v. Miller*,
600 P.2d 698 (Wash. Ct. App. 1979) ................................................................. 11

*Medtronic, Inc. v. Lohr*,
518 U.S. 470 (1996) ................................................................................... 7

*Meilleur v. AT & T Inc.*,
No. 11–1025 MJP, 2011 WL 5592647 (W.D. Wash. Nov. 16, 2011) .................................. 6

*Nat'l Pork Producers Council v. Ross*,
598 U.S. 356 (2023) ................................................................................... 5

*Nat'l Pork Producers Council v. Ross*,
6 F.4th 1021 (9th Cir. 2021) ......................................................................... 5

*Nat'l Shooting Sports Found. v. Bonta*,
718 F. Supp. 3d 1244 (S.D. Cal. 2024) ............................................................... 4

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
469 F.3d 348 (4th Cir. 2006) ....................................................................... 9–10

*Panag v. Farmers Ins. Co. of Wash.*,
204 P.3d 885 (Wash. 2009) ........................................................................... 12

*Pike v. Bruce Church, Inc.*,
397 U.S. 137 (1970) ................................................................................... 3

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - iii
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*Rosenblatt v. City of Santa Monica*,
  940 F.3d 439 (9th Cir. 2019) .................................................................................. 6

*Rosolowski v. Guthy-Renker LLC*,
  230 Cal. App. 4th 1403 (2014) ........................................................................ 12–13

*S.D. Myers, Inc. v. City & Cty. of San Francisco*,
  253 F.3d 461 (9th Cir. 2001) .................................................................................. 4

*Sam Francis Found. v. Christies, Inc.*,
  784 F.3d 1320 (9th Cir. 2015) ................................................................................ 4

*Scott v. Cingular Wireless*,
  161 P.3d 1000 (Wash. 2007) ................................................................................... 3

*Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*,
  2:25-CV-00284-RLP, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026) ....................... 1, 4, 13

*State v. Heckel*,
  24 P.3d 404 (Wash. 2001) ................................................................................... 3, 6

*State v. Mandatory Poster*,
  398 P.3d 1271 (Wash. App. 2017) ........................................................................ 15

*State v. TVI, Inc.*,
  524 P.3d 622 (Wash 2023) .................................................................................... 14

*Stengel v. Medtronic*,
  704 F.3d 1224 (9th Cir. 2013) ................................................................................ 6

*Sw. Sunsites, Inc. v. Fed. Trade Comm'n*,
  785 F.2d 1431 (9th Cir. 1986) .............................................................................. 14

*ThermoLife Int'l LLC v. NeoGenis Labs Inc.*,
  No. CV-18-02980-PHX-DWL, 2020 WL 6395442 (D. Ariz. Nov. 2, 2020) ............... 6

*Thompson v. United States*,
  604 U.S. 408 (2025) .............................................................................................. 14

*United States v. LeCoe*,
  936 F.2d 398 (9th Cir. 1991) .................................................................................. 9

*Wagner v. Spire Vision*,
  No. C 13-04952 WHA, 2014 WL 889483 (N.D. Cal. Mar. 3, 2014) ...................... 11

*Washington State Grange v. Washington State Republican Party*,
  552 U.S. 442 (2008) ................................................................................................ 4

*Workman v. Plum Inc.*,
  141 F. Supp. 3d 1032 (N.D. Cal. 2015) ............................................................... 12

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - iv
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

**Statutes**

15 U.S.C. § 7704 .......................................................................................................... 2

15 U.S.C. § 7706 .......................................................................................................... 2

15 U.S.C. § 7707(b)(1) ................................................................................................ 8

1998 Wash. Sess. Laws 517 ........................................................................................ 6

H.B. 2274, 69th Leg., Reg. Sess. (Wash. 2026) ......................................................... 2

Wash. Rev. Code § 19.190.020(1) ............................................................................... 2

Wash. Rev. Code § 19.190.020(1)(a) ........................................................................ 10

Wash. Rev. Code § 19.190.020(1)(b) ...................................................................... 2, 8

Wash. Rev. Code § 19.190.040(1) ............................................................................... 2

**Other Authorities**

Fed. Trade Comm'n, *CAN-SPAM Act: A Compliance Guide for Business* (January 2024), https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business ................................................................................................................ 2

H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998) ..................................................................................................... 3

S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999) ...................................................... 3

S. Rep. No. 108-102 (2003) ........................................................................... 7–8, 10, 13

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 .............................................................................................. 6

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - v
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## I.   INTRODUCTION

Washington's Commercial Electronic Mail Act (CEMA) is constitutional. The statute protects Washington residents from deceptive commercial email messages and makes sending them a violation of the Washington Consumer Protection Act (CPA).

CEMA does not discriminate against out-of-state interests or otherwise violate the dormant Commerce Clause. Like many state laws, CEMA's protection may, at times, have a practical effect on people or companies outside Washington, but that occasional extraterritorial impact does not offend the United States Constitution. Defendant Reinalt-Thomas Corporation's arguments misunderstand federal constitutional law and the operation of the interconnected modern economy.

Similarly, the federal Controlling the Assault of Non-Solicited Pornography and Marketing Act (CAN-SPAM) does not preempt CEMA. In arguing otherwise, Reinalt-Thomas tries to impose on plaintiffs a heightened fraud standard that is not found anywhere in either CEMA or CAN-SPAM. CAN-SPAM's preemption savings clause specifically carves out and preserves state statutes like CEMA that prohibit misleading or deceptive emails. Reinalt-Thomas's cited authority does not support its argument that CEMA plaintiffs must plead tort elements to avoid preemption, nor does Reinalt-Thomas acknowledge the many courts that have rejected that argument.

This Court should deny the motion to dismiss, just as other Washington federal courts have done in six recent orders. *See Agnew v. Macys Retail Holdings LLC*, No. 2:25-CV-02006-JHC, 2026 WL 764140 (W.D. Wash. Mar. 18, 2026); *Shahpur v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 2:25-CV-00284-RLP, 2026 WL 571122 (E.D. Wash. Feb. 27, 2026); *Jerde v. Bylt*, No. 2:25-CV-01496-JHC, 2026 WL 415445 (W.D. Wash. Feb. 13, 2026); *Kempf v. FullBeauty Brands Operations LLC*, No. C25-1141 TSZ, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026); *Ma v. Nike, Inc.*, No. C25-1235JLR, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026); *Harrington v. Vineyard Vines, LLC*, No. C25-1115 TSZ,

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 1
(2:25-cv-02008-TL)

2025 WL 3677479 (W.D. Wash. Dec. 18, 2025), *reconsideration denied sub nom.*, No. C25-1115 TSZ, 2026 WL 125134 (W.D. Wash. Jan. 16, 2026). No Washington court—state or federal—has found the challenged portion of CEMA unconstitutional or preempted by CAN-SPAM.

## II. BACKGROUND

Adopted in 1998, CEMA's application to email is narrow. At issue here, CEMA prohibits a person from sending email marketing messages containing "false or misleading information," specifically "in the subject line," to email addresses the sender knows or has reason to know belong to Washington State residents. Wash. Rev. Code § 19.190.020(1)(b). CEMA does not address the content of emails, and unlike CAN-SPAM, CEMA does not contain disclosure requirements about the commercial nature of the email, the location of the sender, or opt-out procedures. *Compare* Wash. Rev. Code § 19.190.020(1) *with* 15 U.S.C. § 7704. While penalties for a CAN-SPAM violation can total $53,088 per email (plus consumer restitution) as of 2025, *see* Fed. Trade Comm'n, *CAN-SPAM Act: A Compliance Guide for Business* (January 2024), https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business, a violation of CEMA is the greater of $500 or actual damages as of 2026, Wash. Rev. Code § 19.190.040(1).[1] Importantly, CEMA has a private right of action for individual consumers, while CAN-SPAM is enforced by federal agencies, state attorneys general, and certain internet providers. *Compare* Wash. Rev. Code § 19.190.040(1) *with* 15 U.S.C. § 7706.

CEMA was designed to address the local impact of spam email on Washington consumers and businesses. The Attorney General's Office reported to the Legislature that during the five-month period before CEMA's passage, of 322 complaints received about unsolicited email, many were commercial advertisements and "spam [was] the highest category of consumer

---

[1] Pursuant to H.B. 2274 (2026), the Washington Legislature lowered CEMA's per violation penalty from $500 to $100. The bill is awaiting the Governor's signature as of the date of this brief.

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 2 (2:25-cv-02008-TL)

complaints" the office received overall. H. Comm. on Energy & Utilities, 55th Leg., Reg. Sess., House Bill Report on H.B. 2752 (Wash. 1998). Legislative testimony emphasized that CEMA "allows expansion of Internet usage while curtailing abuses before they reach crisis." S. Comm. on Energy, Technology & Telecommunications, 56th Leg., Reg. Sess., Senate Bill Report on H.B. 1037 (Wash. 1999).

### III.   ARGUMENT

The State intervenes for the limited purpose of defending CEMA's constitutionality pursuant to 28 U.S.C. § 2403(b). It takes no position with respect to other issues raised in the litigation, including whether the email subject lines at issue are false or misleading as a matter of law. Overall, the State agrees with the arguments regarding CEMA's constitutionality in Plaintiff's response brief. Dkt. 32 at 10-19. The State writes separately, however, to offer the perspective of the State's chief law enforcement officer as to CEMA's constitutionality, its proper interpretation, and the importance of private enforcement of consumer protection statutes like CEMA. *See Scott v. Cingular Wireless*, 161 P.3d 1000, 1006 (Wash. 2007) (observing "[p]rivate actions by private citizens are now an integral part of CPA enforcement" and that consumers "bringing actions under the CPA do not merely vindicate their own rights; they represent the public interest and may seek injunctive relief even when the injunction would not directly affect their own private interests").

### A.   CEMA Does Not Violate the Dormant Commerce Clause

Reinalt-Thomas first argues that CEMA violates the dormant Commerce Clause because: (1) CEMA directly controls commerce occurring outside of Washington's boundaries; and (2) CEMA excessively burdens interstate commerce, under the balancing test established by *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970). Dkt. 29 at 9-16. These arguments generally fail for the reasons in Plaintiff's opposition brief, Dkt. 32 at 10-13, particularly because the Washington Supreme Court already rejected a dormant Commerce Clause challenge to CEMA decades ago. *State v. Heckel*, 24 P.3d 404, 409-13 (Wash. 2001). Both this Court and the Eastern

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 3
(2:25-cv-02008-TL)

District recently rejected dormant Commerce Clause challenges to CEMA as well. *Kempf*, 2026 WL 395677, at *5-7; *Shahpur*, 2026 WL 571122, at *4-5. The State endeavors not to repeat Plaintiff's arguments and instead will emphasize a few points.

First, the law is clear that a facial challenge to a statute is highly disfavored and can only succeed if Reinalt-Thomas meets the incredibly high bar to prove that "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cty. of San Francisco*, 253 F.3d 461, 467 (9th Cir. 2001). Reinalt-Thomas, relying upon *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1257 (S.D. Cal. 2024), *reconsideration denied*, 2025 WL 1012326 (S.D. Cal. 2025), and *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015), seeks to lessen that burden by asking the Court to rely upon certain hypotheticals. Dkt. 29 at 10-12. But "speculation about possible vagueness in hypothetical situations not before the Court will not support a facial attack on a statute when it is surely valid in the vast majority of its intended applications." *Hill v. Colorado*, 530 U.S. 703, 733 (2000) (internal quotation omitted). Here, the text of CEMA makes clear that the statute "is surely valid in the vast majority of its intended applications," i.e., it applies to spammers using equipment located in Washington and to the receipt of spam by a Washington resident located in Washington. Reinalt-Thomas's self-serving hypotheticals at the pleading stage are not sufficient to support a facial challenge, particularly in light of the Supreme Court's warning to "not to go beyond the statute's facial requirements and speculate about 'hypothetical' or 'imaginary' cases." *See, e.g.*, *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449–50 (2008).

Indeed, Reinalt-Thomas's hypotheticals about speculative companies in New York and college students in California underscore why facial challenges are so disfavored. *See id.* at 449, 450–51 (facial challenges are disfavored because they "often rest on speculation," "run contrary to the fundamental principle of judicial restraint" and "threaten to short circuit the democratic process"). In short, Reinalt-Thomas's speculative attorney arguments pointedly ignore "the

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 4 (2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Supreme Court's clear instruction . . . that extreme caution is warranted before a court deploys its implied authority to reject a state law under the dormant Commerce Clause." *Flynt v. Bonta*, 131 F.4th 918, 926 (9th Cir. 2025), *cert. denied,* 25-173, 2026 WL 79841 (U.S. Jan. 12, 2026) (cleaned up).

Second, Reinalt-Thomas overemphasizes the importance of the alleged extraterritorial impact of CEMA under the dormant Commerce Clause in the interconnected modern economy. *See Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 374-75 (2023) ("In our interconnected national marketplace, many (maybe most) state laws have the 'practical effect of controlling' extraterritorial behavior."). The Ninth Circuit aptly noted that while the dormant Commerce Clause is "not yet a dead letter," certainly "it is moving in that direction." *Nat'l Pork Producers Council v. Ross*, 6 F.4th 1021, 1033 (9th Cir. 2021), *aff'd*, 598 U.S. 356 (2023). Thus, the Supreme Court has warned courts to use "extreme caution ... before ... deploy[ing] this implied authority." *Nat'l Pork Producers*, 598 U.S. at 390. "Preventing state officials from enforcing a democratically adopted state law in the name of the dormant Commerce Clause is a matter of 'extreme delicacy,' something courts should do only 'where the infraction is clear.'" *Id.* (quoting *Conway v. Taylor's Executor*, 1 Black 603, 634, 66 U.S. 603 (1862)). There is no substantial, non-speculative extraterritorial impact here, certainly not one rising to a level of constitutional magnitude.

Finally, although both parties discuss balancing under *Pike*, their briefing fails to note that the last time the Supreme Court explicitly invalidated a state statute under *Pike* was in 1982. *See Edgar v. MITE Corp.*, 457 U.S. 624 (1982).[2] Additionally, although both parties speak broadly about the local benefits of CEMA, it is clear CEMA has a connection to Washington, a strong one—it is limited to emails targeting Washington residents, even if some of them

---

[2] The Court invalidated a state statute under a *Pike*-like balancing analysis in *Bendix Autolite Corp. v. Midwesco Enterprises, Inc.*, 486 U.S. 888 (1988), but only Justice Scalia's concurring opinion actually cited *Pike* and applied its test.

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 5
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

temporarily travel outside the state. The Washington Legislature and the Washington Supreme Court have identified the legitimate local benefits of CEMA, *see* 1998 Wash. Sess. Laws 517 (former Wash. Rev. Code § 19.190.005) (describing complaints about the growing volume of commercial email); *State v. Heckel*, 24 P.3d 404, 409–10 (Wash. 2001) (detailing local benefits from CEMA), and the Court must "presume the law serves the [state's] legitimate interests." *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019). Reinalt-Thomas, as the party bearing the burden here, *id.*, cannot overcome this presumption.

**B.    CAN-SPAM Does Not Preempt CEMA Claims About Deceptive Subject Lines**

Preemption is a constitutional issue separately warranting the State's intervention under Rule 5.1. *See Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1060 (9th Cir. 2009) (citing U.S. Const. art. VI, cl. 2) (observing preemption doctrine "derives from the Supremacy Clause of the United States Constitution"); *ThermoLife Int'l LLC v. NeoGenis Labs Inc.*, No. CV-18-02980-PHX-DWL, 2020 WL 6395442, at *16 (D. Ariz. Nov. 2, 2020) (stating because preemption claims are constitutional in nature, state must be allowed to address such claims).

Any preemption analysis begins with the "presumption against supplanting the historic police powers of the States by federal legislation unless that is the clear and manifest purpose of Congress." *Virtumundo*, 575 F.3d at 1060 (cleaned up). "This presumption against preemption leads us to the principle that express preemption statutory provisions should be given narrow interpretation." *Id*. (cleaned up). Reinalt-Thomas, as the party "seeking to invalidate a state law based on preemption bear[s] the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Stengel v. Medtronic*, 704 F.3d 1224, 1227–28 (9th Cir. 2013) (en banc) (cleaned up). "Consumer protection is an area of traditional state authority creating a presumption against federal preemption." *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1130 (W.D. Wash. 2012) (citing *Meilleur v. AT & T Inc.*, No. 11–1025 MJP, 2011 WL 5592647 at *3 (W.D. Wash. Nov. 16, 2011)). Thus, the

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 6
(2:25-cv-02008-TL)

presumption against preemption applies to both the *existence* and *scope* of the alleged preemption. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

### 1. CAN-SPAM exempts consumer protection statutes like CEMA

CAN-SPAM was never intended to replace traditional state regulation of unfair and deceptive acts and practices (like CEMA). Although Reinalt-Thomas wishes the Court to focus on one aspect of CAN-SPAM's intent—the need for national regulations—the company ignores the primary purpose of CAN-SPAM: to reduce the sheer volume of unwanted commercial email messages. In fact, the Senate Report accompanying the bill does not list anything akin to "creating a uniform national system of regulations" among its purposes:

> The purposes of this legislation are to: (i) prohibit senders of electronic mail (e-mail) for primarily commercial advertisement or promotional purposes from deceiving intended recipients or Internet service providers as to the source or subject matter of their e-mail messages; (ii) require such e-mail senders to give recipients an opportunity to decline to receive future commercial e-mail from them and to honor such requests; (iii) require senders of unsolicited commercial e-mail (UCE) to also include a valid physical address in the e-mail message and a clear notice that the message is an advertisement or solicitation; and (iv) prohibit businesses from knowingly promoting, or permitting the promotion of, their trade or business through e-mail transmitted with false or misleading sender or routing information.

S. Rep. No. 108-102, at 1 (2003). In short, CAN-SPAM (like CEMA before it) was consumer protection legislation, not legislation designed to benefit companies that send mass email.

While CAN-SPAM does indeed set some uniform national standards for certain technical issues like opt-out mechanisms, sender identification, and postal address disclosure, none of the national standards in CAN-SPAM relate to traditional consumer protection regulations that addressed unfair and deceptive acts and practices in email:

> The legislation would supersede State and local statutes, regulations, and rules that expressly regulate the use of e-mail to send commercial messages except for statutes, regulations, or rules that target fraud or deception in such e-mail. Thus, **a State law requiring some or all commercial e-mail to carry specific types of labels, or to follow a certain format or contain specified content, would be preempted. By contrast, a State law prohibiting fraudulent or deceptive headers, subject lines, or content in commercial e-mail would not be preempted**. Given the inherently interstate nature of e-mail communications, the Committee believes that this bill's creation of one national standard is a proper

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 7 (2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

exercise of the Congress's power to regulate interstate commerce that is essential to resolving the significant harms from spam faced by American consumers, organizations, and businesses throughout the United States. This is particularly true because, in contrast to telephone numbers, e-mail addresses do not reveal the State where the holder is located. As a result, a sender of e-mail has no easy way to determine with which State law to comply. **Statutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway**.

S. Rep. No. 108-102, at 21-22 (2003) (emphasis added). CAN-SPAM also specifically exempts other non-email consumer protection statutes. *Id.* at 22. In short, CAN-SPAM was never trying to "fix" a problem with consumer protection regulations like CEMA. *See Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 22 (2011) ("The legislative history also makes clear . . . that [CAN-SPAM's] preemption provision was largely intended to target state statutes imposing content requirements on commercial e-mails, while leaving states free to regulate the use of deceptive practices in commercial e-mails in whatever manner they chose.").

It is no surprise then that while CAN-SPAM's preemption clause states that the statute supersedes any state law that "regulates the use of electronic mail to send commercial messages," it expressly exempts "any such statute" that "prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1). The CEMA provision at issue here does just that, prohibiting any email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). Not only is this consistent with the history of CAN-SPAM, this plain language should end the preemption analysis. *Am. Apparel & Footwear Ass'n, Inc. v. Baden*, 107 F.4th 934, 939 (9th Cir. 2024) (to interpret an express preemption clause, a court is required "to look to the plain wording of the statute and surrounding statutory framework to determine whether Congress intended to preempt state law").[3]

---

[3] CEMA predates CAN-SPAM by several years, so the conclusion that CEMA fits squarely into the preemption exemption is further supported by the long-standing rule that "Congress is, of course,

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 8 (2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

## 2.    A plaintiff need not plead common law tort elements to avoid preemption

Despite CAN-SPAM's plain language, Reinalt-Thomas presses a restrictive reading of the preemption clause, asserting it saves "only" traditional tort theories like common-law fraud from preemption. Dkt. 29 at 21 (relying primarily on *Virtumundo*). This is incorrect as a matter of law and cannot be squared with Reinalt-Thomas's own authorities—none of which state "only" tort claims are exempt.

Over sixteen years ago, *Virtumundo* addressed the scope of CAN-SPAM's preemption clause as an issue of first impression in this circuit, relying in part on the then-only federal circuit court decision addressing the clause: *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348 (4th Cir. 2006). *Virtumundo,* 575 F.3d at 1059-60. However, neither *Virtumundo* nor *Omega* held that common law torts like fraud are the "only" state law claims saved from the CAN-SPAM preemption clause. To the contrary, both cases *confirm* the exception applies broadly to "traditionally tortious <u>or wrongful conduct</u>." *Virtumundo*, 575 F.3d at 1062 (quoting *Omega*, 469 F.3d at 354) (emphasis added). Far from supporting Reinalt-Thomas's arguments, *Virtumundo* explained state law claims about deceptive email subject lines were not preempted. *Id*. at 1062 (observing the legislative intent that "a State law prohibiting *fraudulent or deceptive* headers, subject lines, or content in commercial e-mail would not be preempted").

Thus, as this Court has already observed, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1; *see also Ma*, 2026 WL 100731, at *2 (same); *Kempf*, 2026 WL 395677, at *4 (same). This conclusion is likewise supported by the Senate Report accompanying CAN-SPAM, which explained that although CAN-SPAM Act' s purpose was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not

presumed to know existing law pertinent to any new legislation it enacts." *United States v. LeCoe*, 936 F.2d 398, 403 (9th Cir. 1991).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 9
(2:25-cv-02008-TL)

raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003).

*Virtumundo* did not directly address deceptive email subject lines. Instead, it considered whether CAN-SPAM preempted the plaintiff's claims under CEMA's provision (1)(a), which prohibits email that "misrepresents or obscures" information about the sender. Wash. Rev. Code § 19.190.020(1)(a). That provision is not at issue here. In any event, unlike this case, the *Virtumundo* plaintiff admitted none of the emails at issue misled or deceived him "in any way." *Virtumundo*, 575 F.3d at 1063. Rather, he asserted the sender should have been "Virtumundo" rather than the abbreviated domain names they used. *Id*. at 1063-64. The Ninth Circuit concluded that such "technical" allegations of "non-deceptive" inaccuracies or omissions are "at best" claims for "incomplete or less than comprehensive information." *Id*. at 1064. Understandably, the court concluded that to the extent that provision (1)(a) addressed non-deceptive acts and practices, this did not rise to the level of "wrongful conduct" or "falsity or deception" necessary to avoid preemption. *Id*. at 1062, 1064. The *Omega* court likewise was focused on state law claims that could potentially impose strict liability for "insignificant inaccuracies" or "bare error" rather than "falsity or deception." 469 F.3d at 352-56. This case, in contrast, is about provision 1(b), which only prohibits "false or misleading information" and cannot be read to impose liability for simple mistakes. *Virtumundo* and *Omega* thus do not support preemption.

Further, in *Virtumundo*, the Ninth Circuit acknowledged that CEMA's statutory framework at least suggested CEMA "extends only to deceptive commercial e-mail" rather than non-deceptive acts or mere clerical errors. 575 F.3d at 1059, n.17. When the Ninth Circuit decided *Virtumundo* in 2009, however, it observed that how narrowly or broadly to interpret CEMA was unsettled. *Id.* at 1059. The *Virtumundo* court thus concluded that "state courts may ultimately mold CEMA's broad language so as to cabin its breadth or interpret the law in conformity with federal legislation." *Id*. Last year, following certification from this Court, the

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 10 (2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

Washington State Supreme Court did just that in *Brown v. Old Navy, LLC*, 567 P.3d 38, 47 (Wash. 2025).

In *Brown*, the court confirmed that CEMA's subject line provision does not prohibit mere technical errors or "mere puffery." *Id*. The *Brown* court held CEMA's subject line provision addresses deceptive "representations of fact—like the duration or availability of a promotion, its terms and nature, the cost of goods, and other facts Washington residents would depend on in making their consumer decisions." *Id. Brown* thus addressed the concern the *Omega* court had in 2006. As this Court recently recognized, *Brown* confirmed CEMA with CAN-SPAM are not in conflict by making clear that rather than targeting mere errors, CEMA's subject line provision prohibits false or deceptive statements about facts that would be important to consumer decision making. *See Harrington,* 2025 WL 3677479, at *1 and *Kempf*, 2026 WL 395677, at *5 (both quoting *Brown*).

Reinalt-Thomas's argument that a plaintiff is required to allege all elements of fraud to bring a CEMA claim is not supported by its cited authority. Those cases deal with different claims and speak to their elements, not CEMA. *See* Dkt. 29 at 22 (citing *Martin v. Miller*, 600 P.2d 698, 700 (Wash. Ct. App. 1979) (assessing "common law fraud"); *Hendrix ex rel. United States v. J-M Mfg. Co., Inc*., 76 F.4th 1164, 1169 & n.5 (9th Cir. 2023) (assessing False Claims Act claim); *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn. 2d 157, 166-68, 273 P.3d 965 (2012) (assessing "fraudulent inducement" claim)). Indeed, this Court has rejected the argument that a CEMA claim requires pleading and proving fraud elements, and has done so recently and years ago. *See Ma*, 2026 WL 100731, at *3 (addressing this issue and concluding plaintiff need not plead reliance, injury or materiality to avoid preemption); *Isomedia, Inc. v. Spectrum Direct, Inc.*, No. C08-1733JLR, 2009 WL 10676391, at *4 (W.D. Wash. May 27, 2009). Other cases are in accord. *See, e.g.*, *Wagner v. Spire Vision*, No. C 13-04952 WHA, 2014 WL 889483, at *2-4 (N.D. Cal. Mar. 3, 2014) (collecting cases); *Asis Internet Servs. v. Member Source Media, LLC*, No. C-08-1321 EMC, 2010 WL 1610066,

PLAINTIFF-INTERVENOR STATE OF WASHINGTON'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT - 11 (2:25-cv-02008-TL)

at *3 (N.D. Cal. Apr. 20, 2010) (considering California's subject line provision, *Virtumundo*, and CAN-SPAM's preemption clause, and holding plaintiff "need not plead reliance and damages in order for its claim to be excepted from preemption"); *Hoang v. Reunion.com, Inc.*, No. C-08-3518 MMC, 2010 WL 1340535, at *6 (N.D. Cal. Mar. 31, 2010) (reversing dismissal under *Virtumundo*, holding failure to allege detrimental reliance was not proper grounds for dismissal).

This Court should likewise decline Reinalt-Thomas's tacit invitation to substitute Reinalt-Thomas's view that email-subject lines are unlikely to influence consumers for the Washington State Supreme Court's interpretations of Washington State law. First, at the Rule 12 stage, the Court must accept all of Plaintiff's well-pled allegations as true for purposes of ruling on Reinalt-Thomas's motion. Nevertheless, when evaluating the tendency of language to deceive for a CPA claim (like those under CEMA), Washington courts look "not to the most sophisticated [consumers] but rather to the least." *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 895 (Wash. 2009) (citation omitted); *Keithly v. Intelius Inc*., 764 F. Supp. 2d 1257, 1268 (W.D. Wash. 2011), *on reconsideration*, No. C09-1485RSL, 2011 WL 2790471 (W.D. Wash. 2011) (some may not be fooled but "not everyone is so wary and/or detail-oriented, nor is the CPA designed to protect only those who need no protection. The capacity of a marketing technique to deceive is determined with reference to the least sophisticated consumers among us.").

Reinalt-Thomas's cherry-picked quotations from other cases strung together to support the contrary idea that email subject lines (including those likely creating false urgency to buy) could not ever violate CEMA should be rejected. Dkt. 29 at 18, 22. The cases Reinalt-Thomas cites for the argument that subject lines cannot influence "reasonable" consumers' purchasing are unavailing. Dkt. 15 at 14-16 citing *Martin v. CCH, Inc*., 784 F. Supp. 2d 1000, 1007 (N.D. Ill. 2011); *Brummet v. Washington's Lottery*, 288 P.3d 48, 54 (Wash. Ct. App. 2012); *Workman v. Plum Inc*., 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015); *Rosolowski v. Guthy-*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 12
(2:25-cv-02008-TL)

*Renker LLC*, 230 Cal. App. 4th 1403, 1417–18 (2014). *Workman* and *Brummet* pre-date *Brown* (which again, concluded consumers <u>do</u> rely on factual representations in subject lines), and none of those cases address commercial emailing, CEMA, or CAN-SPAM. *Martin*, like *Virtumundo*, addresses preemption of technical claims regarding missing information about the email sender and does not conclude all claims regarding <u>deceptive subject lines</u> are preempted. *See Martin*, 784 F. Supp. 2d at 1006 (suggesting only in dicta that some technical claims regarding "incomplete" or "less than comprehensive" subject lines would also likely be preempted). Finally, *Rosolowski* (which also pre-dates *Brown*) addressed subject lines containing common "commercial missives" not likely to mislead a consumer and its analysis splits from that of another California court. 230 Cal. App. 4th at 1417-18 (acknowledging *Hypertouch Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 33 (Cal. Ct. App. 2011) found that subject lines creating impressions contrary to what the email body may reveal can still be "misleading").

### 3.    The terms "deception" and "misleading" are harmonious

As detailed above, because CEMA's subject-line provision prohibits only "falsity" or "deception" in the subject-line of commercial e-mails, it "falls squarely within this area reserved to the States[.]" *Harrington*, 2025 WL 3677479, at *1; *see also Ma*, 2026 WL 100731, at *2; *Shahpur*, 2026 WL 571122, at *4 ("The use of the words 'falsity or deception' indicates Congress intended the CAN-SPAM exception to apply more broadly than claims of fraud."); *Kempf*, 2026 WL 395677, at *4, n.8 ("States are expressly permitted [under CAN-SPAM's savings clause] to provide private avenues of relief for false or deceptive commercial e-mails."). This conclusion is supported by the Senate Report accompanying CAN-SPAM, which explained that although the purpose of the CAN-SPAM Act was to impose a single national standard for the content of commercial e-mail, "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern, because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." S. Rep. No. 108-102, at 21-22 (2003).

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 13
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

To avoid this obvious conclusion, Reinalt-Thomas relies upon a semantic longshot—that CEMA and CAN-SPAM cannot coexist because the word "misleading" in CEMA is not the same as "deception" in CAN-SPAM, that Congress used the terms "deception" and "misleading" in different parts of CAN-SPAM, and that neither of those two terms rise to the level of falsity. Dkt. 29 at 19-20. In Reinalt-Thomas's own words, CEMA is preempted by CAN-SPAM because "'False/falsity,' 'deception,' and 'misleading' . . . cannot be viewed as synonymous." *Id.* at 19. This entirely misses the point. All three terms are not intended to be 100% synonymous among themselves because both statutes use disjunctive terms: CEMA prevents the use of "false *or* misleading" subject lines, while CAN-SPAM exempts state statutes that prohibit "falsity *or* deception." Neither statute requires both falsity *and* the next term, so there never has been a requirement that "false" is synonymous with the other two terms.

Although "falsity" is indeed different than "deception" and "misleading," the latter two terms are harmonious in the consumer protection context. As Reinalt-Thomas correctly notes, courts have correctly held that falsity is a higher standard than whether something is deceptive or misleading. *See, e.g.*, *Thompson v. United States*, 604 U.S. 408, 413 (2025) ("[F]alse and misleading are two different things. … [B]asic logic dictates that at least some misleading statements are not false."); *State v. TVI, Inc.*, 524 P.3d 622, 637 (Wash 2023) ("As applied to ordinary commercial speech, the CPA allows for deceptive net impression claims because a communication may be deceptive by virtue of the net impression it conveys, even though it contains truthful information.") (cleaned up).

However, it does not follow that misleading and deceptive are materially different concepts that necessarily must be distinct in CEMA and CAN-SPAM. To the contrary, deception and misleading are interrelated concepts, particularly in the consumer protection context. *See, e.g.*, *Sw. Sunsites, Inc. v. Fed. Trade Comm'n,* 785 F.2d 1431, 1435 (9th Cir. 1986) ("deception" exists under the Federal Trade Commission Act "if there is a representation, omission or practice that is likely to mislead" a reasonable consumer) (emphasis omitted);

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 14
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

*State v. Mandatory Poster*, 398 P.3d 1271, 1274 (Wash. App. 2017), *rev. denied*, 404 P.3d 496 (2017) ("An act is deceptive if it is likely to mislead a reasonable consumer.").

The fact that Congress used "deceptive" and "misleading" in different parts of CAN-SPAM supports this conclusion, rather than undermines it. For example, in 15 U.S.C. § 7704(a)(2)'s prohibition of "deceptive subject headings," Congress defined "deceptive" in this context as "misleading," i.e., "that a subject heading of the message would be likely to mislead a recipient . . . ." Moreover, the section goes on to incorporate the core provision of the FTC Act (15 U.S.C. § 45), i.e., the prohibition on unfair and deceptive acts or practices. It is well accepted that the FTC Act defines deception and misleading congruously. *See, e.g.*, *F.T.C. v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009) (under the FTC Act, an act or practice is "deceptive" if, among other things, it "is likely to mislead consumers acting reasonably under the circumstances"). Thus, there is no reason to conclude that the use of term "deception" in CAN-SPAM must—or even should—be read any differently than the term "misleading" in CEMA.

//

//

//

//

//

//

//

//

//

//

//

//

//

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 15
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744

#### IV.   CONCLUSION

The State respectfully requests that the Court deny Reinalt-Thomas's constitutional challenges to CEMA.

DATED this 23rd day of March, 2026.

NICHOLAS W. BROWN
Attorney General


*/s/ Robert Hyde*
BEN BRYSACZ, WSBA #54683
ROBERT HYDE, WSBA #33593
CLAIRE MCNAMARA, WSBA #50097
Assistant Attorneys General
Attorneys for Plaintiff-Intervenor State of Washington
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
206-474-7744
ben.brysacz@atg.wa.gov
robert.hyde@atg.wa.gov
claire.mcnamara@atg.wa.gov

*I certify that this memorandum contains 5,068 words, in compliance with the Local Civil Rules.*

PLAINTIFF-INTERVENOR STATE OF
WASHINGTON'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT - 16
(2:25-cv-02008-TL)

ATTORNEY GENERAL OF WASHINGTON
Consumer Protection Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
206-464-7744