The Honorable Tana Lin

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

COLBY HUTTON, on behalf of himself and all others similarly situated,

Plaintiff,

and

STATE OF WASHINGTON,

Plaintiff-Intervenor,

v.

THE REINALT-THOMAS CORPORATION,

Defendant.

No. 2:25-cv-02008-TL

DEFENDANT THE REINALT-THOMAS CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT

*Oral Argument Requested*

NOTED ON MOTION CALENDAR: April 6, 2026[1]

---

[1] Based on briefing schedule set by the Parties' Stipulated Order. *See* Dkts. 33, 34.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   ARGUMENT .................................................................................................................. 2

    A.   Plaintiff Fails to Allege a CEMA Violation. ....................................................... 2

        1.   Plaintiff Cannot Assert Claims for Emails He Did Not Receive. ............. 2

        2.   The Subject Lines Are Not False or Misleading. ..................................... 2

        3.   Plaintiff Fails to Allege Discount Tire Knew His Email Address
Belonged to a Washington Resident. ......................................................... 4

    B.   CEMA Is Invalid Under the Dormant Commerce Clause. ................................... 4

        1.   CEMA Regulates Entirely Extraterritorial Conduct. ............................... 5

            a.   Binding Ninth Circuit Law Prohibits State Regulation of
Entirely Extraterritorial Conduct. ................................................. 5

            b.   *Sam Francis* Applies Here. ........................................................... 6

        2.   CEMA Excessively Burdens Interstate Commerce. ................................. 8

    C.   CAN-SPAM Preempts Plaintiff's Broad Application of CEMA. ...................... 10

        1.   CAN-SPAM Preempts CEMA's Prohibition on Incomplete Subject
Lines. ...................................................................................................... 10

        2.   "Misleading" Is Broader than "Falsity or Deception." ........................... 10

        3.   Plaintiff Admits He Must Allege Discount Tire's Statements Were
Material to Avoid Preemption. ................................................................. 14

        4.   Plaintiff Cannot Allege Knowledge or Injury. ........................................ 16

    D.   Plaintiff Admits His CPA Claim Fails If His CEMA Claim Fails. .................... 17

    E.   Plaintiff's Claim for Actual and Treble Damages Fails. .................................... 17

III.  CONCLUSION ............................................................................................................. 17

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – i
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Agnew v. Macy's Retail Holdings, LLC*,
 2026 WL 764140 (W.D. Wash. 2026)................................................................................12, 13

*Ashlynn Mktg. v. Pan*,
 2025 WL 1953229 (S.D. Cal. 2025)..........................................................................................5

*Asis Internet Servs. v. Consumerbargaingiveaways, LLC*,
 622 F. Supp. 2d 935 (N.D. Cal. 2009) ....................................................................................14

*Asis Internet Servs. v. Member Source Media, LLC*,
 2010 WL 1610066 (N.D. Cal. 2010) .......................................................................................14

*Asis Internet Servs. v. Subscriberbase Inc.*,
 2010 WL 1267763 (N.D. Cal. 2010) .......................................................................................14

*Ass'n for Accessible Meds. v. Bonta*,
 766 F. Supp. 3d 1020 (E.D. Cal. 2025)........................................................................1, 6, 7, 8

*Bontrager v. Showmark Media LLC*,
 2014 WL 12600201 (C.D. Cal. 2014)........................................................................................2

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
 2011 WL 3471476 (W.D. Wash 2011) .....................................................................................11

*Chen v. Sur La Table, Inc.*,
 655 F. Supp. 3d 1082 (W.D. Wash. 2023)...............................................................................12

*Coto Settlement v. Eisenberg*,
 593 F.3d 1031 (9th Cir. 2010) ...................................................................................................3

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014) .....................................................................................................4

*Ferguson v. Quinstreet, Inc.*,
 2008 WL 3166307 (W.D. Wash. 2008), *aff'd sub nom., Ferguson v. Active Response
 Grp.*, 348 F. App'x 255 (9th Cir. 2009)...................................................................................13

*Flynt v. Bonta*,
 131 F.4th 918 (9th Cir. 2025) ................................................................................................5, 6

*Gordon v. Virtumundo, Inc.*,
 575 F.3d 1040 (9th Cir. 2009) ........................................................................................ *passim*

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – ii
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Harrington v. Vineyard Vines, LLC*,
   2025 WL 3677479 (W.D. Wash. 2025) ............................................................................12, 13

*Int'l Franchise Ass'n, Inc. v. City of Seattle*,
   803 F.3d 389 (9th Cir. 2015) .............................................................................................4, 8

*Iowa Pork Producers Ass'n v. Bonta*,
   2024 WL 3158532 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2866 (2025)................................6

*Jang v. Life Ins. Co.*,
   2017 WL 11632250 (C.D. Cal. 2017)...................................................................................17

*Jerde v. Bylt, LLC*,
   2026 WL 415445 (W.D. Wash. 2026) ............................................................................12, 13

*Jones v. County of San Bernardino*,
   2022 WL 3138880 (C.D. Cal. 2022).....................................................................................17

*Kempf v. Fullbeauty Brands Operations, LLC*
   2026 WL 395677 (W.D. Wash. 2026)........................................................................6, 12, 13

*Kousisis v. United States*,
   605 U.S. 114 (2025).......................................................................................................14, 15

*Ma v. Nike, Inc.*,
   2026 WL 100731 (W.D. Wash. 2026) ............................................................................12, 13

*Moser v. Benefytt, Inc.*,
   8 F.4th 872 (9th Cir. 2021) ....................................................................................................2

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009) .................................................................................................2

*Nat'l Ass'n of Optometrists & Opticians v. Harris*,
   682 F.3d 1144 (9th Cir. 2012) ...............................................................................................8

*Nat'l Pork Producers Council v. Ross*,
   598 U.S. 356 (2023)......................................................................................................4, 5, 6

*Nat'l Shooting Sports Found. v. Bonta*,
   718 F. Supp. 3d 1244 (S.D. Cal. 2024), *recons. denied*, 2025 WL 1012326
   (S.D. Cal. 2025) ............................................................................................................ 6, 7, 8

*Omega World Travel, Inc. v. Mummagraphics, Inc.*,
   469 F.3d 348 (4th Cir. 2006) ...........................................................................................9, 16

*Paris v. Steinberg & Steinberg*,
   828 F. Supp. 2d 1212 (W.D. Wash. 2011).............................................................................17

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – iii
(No. 2:25-cv-02008-TL)

*Rosenblatt v. City of Santa Monica*,
    940 F.3d 439 (9th Cir. 2019) ...............................................................................................9

*S.D. Myers, Inc. v. City & Cnty. of S.F.*,
    253 F.3d 461 (9th Cir. 2001) ...............................................................................................8

*Sam Francis Found. v. Christies, Inc.*,
    784 F.3d 1320 (9th Cir. 2015) ...........................................................................1, 5, 6, 7, 8

*Sams v. Yahoo! Inc.*,
    713 F.3d 1175 (9th Cir. 2013) ........................................................................................5, 15

*Silvas v. E\*Trade Mortg. Corp.*,
    514 F.3d 1001 (9th Cir. 2008) ...........................................................................................13

*Silverstein v. Keynetics Inc.*,
    2016 WL 7475616 (N.D. Cal. 2016), *aff'd*, 727 F. App'x 244 (9th Cir. 2018) ...............14, 15

*Thompson v. United States*,
    604 U.S. 408 (2025)...........................................................................................................11

*Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*,
    2026 WL 571122 (E.D. Wash. 2026) ..........................................................................6, 12, 13

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008)..............................................................................................................8

*Zoobuh, Inc. v. Better Broad., LLC.*,
    2013 WL 2407669 (D. Utah 2013) .....................................................................................11

**State Cases**

*Adams v. King County*,
    164 Wn.2d 640 (2008) ........................................................................................................16

*Asabre v. Retail Servs. & Sys., Inc.*,
    2023 WL 12187638 (Md. Cir. Ct. 2023) .............................................................................10

*Brown v. Old Navy, LLC*,
    4 Wn.3d 580 (2025) ...................................................................................................... *passim*

*Montes v. Sparc Group LLC*,
    No. 104162-4 (Wash. Apr. 2, 2026) ....................................................................................15

*Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*,
    64 Wn. App. 553 (1992) ......................................................................................................17

*State v. Heckel*,
    143 Wn.2d 824 (2001) ..........................................................................................................9

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – iv
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*Stephens v. Omni Ins. Co.*,
138 Wn. App. 151 (2007), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*,
166 Wn.2d 27 (2009) ................................................................................................13

**Federal Statutes**

15 U.S.C. § 7701................................................................................................................9

15 U.S.C. § 7704.................................................................................................10, 11, 16

**State Statutes**

H.B. 2274, 69th Leg., Reg. Sess. (Wash. 2026) ............................................................16

RCW 19.190.020 ....................................................................................................4, 7, 12

RCW 19.190.040 ..............................................................................................................2

**Rules**

Fed. R. Civ. P. 12(b)(6)........................................................................................5, 15, 17

**Other Authorities**

16A David K. DeWolf & Keller W. Allen, WASHINGTON PRACTICE: TORT LAW & PRACTICE
(5th ed. 2025) ...........................................................................................................15

Laws of 1998, ch. 149 (Wash.) ........................................................................................9

*Mislead*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/mislead (last
accessed Mar. 27, 2026)............................................................................................13

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – v
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

# I.     INTRODUCTION

Plaintiff's and Plaintiff-Intervener State of Washington's (the "State") oppositions fail to overcome the exposed defects in Plaintiff's First Amended Complaint ("FAC"), Dkt. 22.

***First***, Plaintiff does not dispute that he failed to allege that: (1) he received some of the alleged emails; (2) certain time-limited sales did not end as advertised; (3) the return of certain sales was predetermined; and (4) The Reinalt-Thomas Corporation ("Discount Tire") had reason to know that ***Plaintiff's*** email address belonged to a Washington resident. Plaintiff thus fails to allege Discount Tire sent emails with false or misleading subject lines in violation of Washington's Commercial Electronic Mail Act ("CEMA").

***Second***, courts in this circuit still "follow[] the precedent set in *Sam Francis*," which makes clear that a state cannot—as CEMA does—***regulate transactions occurring wholly outside its borders***, even if the statute relies on a residency hook. *Ass'n for Accessible Meds. v. Bonta*, 766 F. Supp. 3d 1020, 1033 (E.D. Cal. 2025), *appeal filed*, No. 25-1694 (9th Cir. Mar. 14, 2025); *Sam Francis Found. v. Christies, Inc.*, 784 F.3d 1320, 1323 (9th Cir. 2015). Additionally, CEMA's nationwide deterrent effect on commercial emails is excessive compared to any putative local benefits, further violating the dormant Commerce Clause.

***Third***, neither Plaintiff nor the State show that Plaintiff's allegations fall within CAN-SPAM's narrow preemption exception. At most, the emails identified are ***misleading***, not false or deceptive. Moreover, Plaintiff does not even try to allege knowledge or injury. Most importantly, he fails to allege materiality—which he concedes is required to avoid preemption.

***Fourth***, Plaintiff concedes his Washington Consumer Protection Act ("CPA") claim falls with his alleged CEMA claim. *See* Dkt. 32 ("Plaintiff-Opp.") at 19.

***Fifth***, Plaintiff does not dispute that he failed to allege facts supporting a claim for actual damages, which dooms his claim for treble damages.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 1
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## II.    ARGUMENT

### A.    Plaintiff Fails to Allege a CEMA Violation.

#### 1.    Plaintiff Cannot Assert Claims for Emails He Did Not Receive.

Plaintiff acknowledges his failure to allege that he received 20 of the 22 alleged emails. Plaintiff-Opp. at 5–6. He then insists those 20 emails provide context for a "scheme" of misleading emails and asks the Court to refrain from evaluating his pleading failure. *Id.* But on a motion to dismiss, the Court must look at Plaintiff's individual CEMA claims. *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 970 (9th Cir. 2009). And under CEMA, Plaintiff can bring claims only for emails he received. RCW 19.190.040 (allowing damages "to the recipient" of a violative email). Because Plaintiff does not allege receipt of those 20 emails, Plaintiff cannot assert a CEMA violation based on them.

Plaintiff suggests the Court need not examine the allegations specific to him because putative class members' claims should not be "curtail[ed]." Plaintiff-Opp. at 5. But "a class action, when filed, includes only the claims of the named plaintiff." *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) (citation omitted). "To conclude otherwise would be to endorse 'the novel and surely erroneous argument that a nonnamed class member is a party to the class-action litigation ***before the class is certified***.'" *Id.* (citation omitted). Because Plaintiff does not allege receipt of 20 emails, his CEMA claims based on them fail.

#### 2.    The Subject Lines Are Not False or Misleading.

On a motion to dismiss, the Court can and should evaluate whether the subject lines are false or misleading on their face. *See Bontrager v. Showmark Media LLC*, 2014 WL 12600201, at *3 (C.D. Cal. 2014). The two emails Plaintiff alleges he received (dated June 13 and July 4, 2025) advertised time-limited promotions. *See* Dkt. 30 at Ex. 1 ("$80 OFF Pirelli tires ends today!"), Ex. 3 ("Last chance for up to $160 off tires & wheels."). Plaintiff argues these emails retroactively became false or misleading when Discount Tire subsequently offered similar promotions. But his FAC still fails, for two reasons:

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 2
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*First,* Plaintiff concedes these promotions ended as advertised, and does not contend that the subject lines claimed Discount Tire would never offer similar future promotions. FAC ¶¶ 81–86; Plaintiff-Opp. at 6.[2] Instead, Plaintiff takes issue with Discount Tire offering (1) a *distinct* deal on separate brands and products one week after the June 13 email, and (2) a separate promotion on wheels and tires four days after the July 4 email.[3] *See* Plaintiff-Opp. at 7 & n.2. But Washington's Supreme Court rejected the idea that companies are prohibited from later offering similar (or better) promotions. *See Brown v. Old Navy, LLC*, 4 Wn.3d 580, 595 (2025) ("Promotions that state 'Best Deals of the Year' are not misrepresentations and do not communicate information that retroactively becomes false (and actionable) under CEMA because market conditions change such that a better sale is later available."). And CEMA does not impose liability for subject lines that purportedly become "false" after the fact, rendering irrelevant Plaintiff's citations to cases interpreting the CPA. *Compare id.*, *with* Plaintiff-Opp. at 6. Additionally, the two subject lines are—at best—inactionable, mere puffery. Statements like "last chance" are too vague to be considered representations of material fact. *Compare Brown*, 4 Wn.3d at 596, *with* Plaintiff-Opp. at 7. In short, the subject lines—on their face—are not false or misleading.

*Second*, even if it could be false or misleading to subsequently offer similar, distinct promotions, Plaintiff fails to allege Discount Tire predetermined it would offer similar promotions at later dates. Instead, Plaintiff argues the Court cannot credit *any* possible alternative explanation regarding the subsequent emails. *See* Plaintiff-Opp. at 8. He is wrong. Where there is a plausible alternative explanation (i.e., that Discount Tire offered arguably similar promotions in response to business considerations after sending the initial emails),

---

[2] The email bodies further demonstrate the promotions' nature and timing. *See* Dkt. 30 at Exs. 1–4. Plaintiff argues the email bodies are "not relevant," Plaintiff-Opp. at 3 n.1, which is inconsistent with his Opposition and FAC, both of which reference the email bodies. *Id.* at 2; FAC ¶¶ 49–86. Regardless, Plaintiff references select portions of the emails, thus allowing incorporation of their entirety by reference. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010).

[3] Plaintiff implies the promotions returned "the very next day." Plaintiff-Opp. at 7. This mischaracterizes his own FAC allegations.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 3
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

"plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts *tending to exclude the possibility that the alternative explanation is true*, in order to render plaintiffs' allegations plausible." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996–97 (9th Cir. 2014) (emphasis added) (citation omitted); Dkt. 29 ("Mot.") at 7.

### 3. Plaintiff Fails to Allege Discount Tire Knew His Email Address Belonged to a Washington Resident.

Plaintiff claims only that Discount Tire knew "its emails were going to Washington residents." Plaintiff-Opp. at 9. But that is not the relevant inquiry. To bring a CEMA claim, Plaintiff must allege Discount Tire knew or had reason to know that *his* email address belonged to a Washington resident. RCW 19.190.020. While Plaintiff cites to Discount Tire's alleged use of Salesforce, IP address tracking, and information from email domain registrars as potential sources of residency information for email recipients, he does not dispute that he failed to allege any of these purported sources of information resulted in Discount Tire knowing or having reason to know that *Plaintiff's email address* belonged to a Washington resident. For example, Plaintiff did not allege that *he* clicked email links while using an IP address associated with a Washington location or that *his* email domain registrar would identify him as a Washington resident if asked. Plaintiff fails to allege a CEMA violation.

### B. CEMA Is Invalid Under the Dormant Commerce Clause.

Plaintiff and the State present a tangled dormant Commerce Clause analysis. Plaintiff invents his own *per se* rule: that the dormant Commerce Clause applies only to state laws that discriminate in favor of its own residents and economic interests. Plaintiff-Opp. at 11–13. But the Supreme Court in *National Pork Producers Council v. Ross* acknowledged it "left the 'courtroom door open' to [dormant Commerce Clause] challenges premised on 'even nondiscriminatory burdens.'" 598 U.S. 356, 379–80 (2023) (citation omitted); *see also Int'l Franchise Ass'n, Inc. v. City of Seattle*, 803 F.3d 389, 399 (9th Cir. 2015) ("*Absent*

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 4
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

discrimination, we will uphold the law 'unless the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits.'" (cleaned up)).

Thus, the Supreme Court left intact the "three theories" under which states can violate the dormant Commerce Clause: "(1) discrimination, (2) extraterritorial regulation, and (3) excessive burden on interstate commerce." *Ashlynn Mktg. v. Pan*, 2025 WL 1953229, at *2 (S.D. Cal. 2025). Unhelpfully, Plaintiff's "arguments bleed together," addressing these independent concepts simultaneously. *See Flynt v. Bonta*, 131 F.4th 918, 925–26 (9th Cir. 2025), *cert. denied*, 2026 WL 79841 (2026); Plaintiff-Opp. at 12. Plaintiff's CEMA claim fails because: (1) Plaintiff seeks to regulate entirely extraterritorial conduct; and (2) CEMA imposes excessive burdens on interstate commerce.

And, contrary to Plaintiff's protestations, this argument is properly considered on a motion to dismiss. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) ("affirmative defenses routinely serve as a basis for granting Rule 12(b)(6) motions where the defense is apparent from the face of the complaint" (citation modified)); *Sam Francis Found.*, 784 F.3d at 1323 (upholding a dormant Commerce Clause challenge to part of a California statute after the district court granted dismissal on Rule 12(b)(6) grounds).

### 1. CEMA Regulates Entirely Extraterritorial Conduct.

#### a. Binding Ninth Circuit Law Prohibits State Regulation of Entirely Extraterritorial Conduct.

While Plaintiff and the State imply the dormant Commerce Clause is obsolete, their own cases say otherwise: "Today's majority does not pull the plug [on the dormant Commerce Clause]. For good reason: … the basic concern of our Commerce Clause jurisprudence [is] that there be 'free private trade in the national marketplace.'" *Nat'l Pork*, 598 U.S. at 395 (Roberts, C.J., concurring) (citations omitted). Plaintiff's insinuation that *National Pork* overruled the holding in *Sam Francis* is untrue. Plaintiff-Opp. at 12.

The Supreme Court in *National Pork* did not vitiate the longstanding principle that laws may not "directly regulate[] out-of-state transactions by those with no connection to the State."

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 5
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

598 U.S. at 376 n.1 (emphasis omitted). Rather, it declined to "fashion two new and more aggressive constitutional restrictions" in the form of *per se* rules against extraterritorial *effects*, in the context of a statute that "regulates only products that companies choose to sell 'within' California." *Id.* at 364, 376 n.1 (citation omitted). As such, it did not address a law that directly regulated wholly out-of-state conduct. *Id.*

The Ninth Circuit recently confirmed that because "the [*National Pork*] Court did not agree upon a 'single rationale'" for its "fractured decision," only the specific result is binding. *Iowa Pork Producers Ass'n v. Bonta*, 2024 WL 3158532, at *2–3 (9th Cir. 2024), *cert. denied*, 145 S. Ct. 2866 (2025).[4] Thus, the *Baldwin-Healy* line of cases—and the Ninth Circuit's decision in *Sam Francis*—still stands, and makes clear that a state may not regulate transactions occurring wholly outside its borders. *See, e.g.*, *Ass'n for Accessible Meds.*, 766 F. Supp. 3d at 1033 (noting the "Supreme Court did not curtail the *Baldwin-Healy* line of cases" and courts in this circuit still "follow[] the precedent set in *Sam Francis* and *Sharpsmart*"); *Nat'l Shooting Sports Found. v. Bonta*, 718 F. Supp. 3d 1244, 1256 n.1 (S.D. Cal. 2024) (*National Pork* "did not disturb the constitutional bar on state laws that 'directly regulate out-of-state transactions by those with no connection to the State'" (cleaned up)), *recons. denied*, 2025 WL 1012326 (S.D. Cal. 2025).

### b.    *Sam Francis* **Applies Here.**

Knowing this, Plaintiff wrongly characterizes Discount Tire as challenging the extraterritorial *effect* of CEMA.[5] Plaintiff-Opp. at 12–13. But CEMA applies to emails sent to

---

[4] Plaintiff relies on *Flynt*, but that involved a California law limiting **licensees of California cardrooms** from owning more than 1% of an out-of-state business associated with casino-style gambling. 131 F.4th at 922. As such, the Ninth Circuit made clear that *Sam Francis* is "distinguishable" because "unlike the statute in *Sam Francis*, which we characterized as 'involving regulation of wholly out-of-state conduct,' the California statutes at issue here 'regulate **in-state conduct** with allegedly significant out-of-state practical effects.'" *Id.* at 930 (citation modified) (citation omitted). *Flynt* therefore merely reiterated *National Pork*'s uncontroversial holding that there is no *per se* rule against state laws with extraterritorial *effects*.

[5] The court in *Kempf v. Fullbeauty Brands Operations, LLC* likewise did not address *Sam Francis* and conflated *National Pork*'s holding that there is no *per se* ban on extraterritorial *effects* with the argument raised here regarding regulation of entirely extraterritorial conduct. 2026 WL 395677, at *6 (W.D. Wash. 2026); *see also Washington v. Ulta Salon, Cosms. & Fragrance, Inc.*, 2026 WL 571122, at *5 (E.D. Wash. 2026) (rejecting dormant Commerce Clause argument without addressing *Sam Francis*). Defendants in both cases are seeking certification for interlocutory review by the Ninth Circuit.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 6
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Washington residents even when they are located elsewhere—thus regulating out-of-state transactions and conduct. *Sam Francis*, 784 F.3d at 1323 (invalidating statute with "no necessary connection with the state *other than the residency of the seller*" (emphasis added)). That situation is not "hypothetical[]," complaints about facial challenges notwithstanding. Dkt. 36 ("State-Opp.") at 4. Plaintiff in this case fails to allege he was in Washington when he received the at-issue emails and seeks to represent a class of Washington residents who received the emails, regardless of class members' location on receipt. And in a facial challenge under the dormant Commerce Clause, "[s]o long as the statutory language *applied* to analyze that scenario—on its face—offends the Constitution, the law must fall." *Nat'l Shooting Sports Found.*, 718 F. Supp. 3d at 1257.[6]

Plaintiff and the State also insist that Washington may apply CEMA to residents who "temporarily travel outside the state" because of Washington's interest in protecting its consumers. *See* State-Opp. at 5–6; Plaintiff-Opp. at 13. But the Ninth Circuit already rejected this attempted residency hook through a state-interest justification. *See Sam Francis*, 784 F.3d at 1323 (without discussion of the California statute's purpose or benefits, holding it "violates the dormant Commerce Clause" because it "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders'" despite being limited to transactions where "*the seller resides in California* or the sale takes place in California" (emphasis added) (cleaned up)). Indeed, a California federal court rejected a nearly identical, post-*National-Pork* attempt to evade the extraterritoriality restriction, reasoning that, "despite the State having sufficiently strong ties to the subjects of regulation (namely, attempting to regulate state residents' conduct), the Ninth Circuit struck down the statute[]" in multiple prior cases. *Ass'n for Accessible Meds.*, 766 F. Supp. 3d at 1033–34.

---

[6] The State insists "the text of CEMA makes clear" that it is valid in the "vast majority of its intended applications." State-Opp. at 4. But CEMA's residency hook (i.e., its text) renders it unconstitutional. CEMA also potentially (and fatally) sweeps in *former* or *occasional* Washington residents, as it applies to defendants that "know[] or ha[ve a] reason to know" of Washington residency, an element that can be met if "information [about residency] is available, upon request" from a third party that may maintain outdated records. RCW 19.190.020(2).

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 7
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

And CEMA is not insulated from the dormant Commerce Clause because it polices electronic transactions "in the interconnected modern economy." *See* State-Opp. at 5. Courts regularly apply the extraterritoriality restriction to statutes regulating communications and other intangible conduct. *See Ass'n for Accessible Meds.* at 1033, 1036 (invalidating statute regulating out-of-state settlement agreements); Mot. at 14.

Because Plaintiff fails to allege he was in Washington when he received each email, CEMA is invalid as applied. CEMA is also facially invalid because, as drafted, "no set of circumstances exists under which [CEMA] would be valid." *S.D. Myers, Inc. v. City & Cnty. of S.F.*, 253 F.3d 461, 467 (9th Cir. 2001).[7] Like the statute challenged in *Sam Francis*, CEMA regulates out-of-state transactions merely because they involve a Washington resident and therefore "facially regulates a commercial transaction that 'takes place wholly outside of the State's borders.'" 784 F.3d at 1323 (citation omitted). CEMA is thus unconstitutional under the dormant Commerce Clause.

### 2. CEMA Excessively Burdens Interstate Commerce.

CEMA is unconstitutional under the dormant Commerce Clause for the additional, independent reason that it excessively burdens interstate commerce. A statute may still be unconstitutional absent discrimination and extraterritorial regulation if "the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits." *Int'l Franchise*, 803 F.3d at 399 (citation modified) (citation omitted); *see also Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1150 (9th Cir. 2012) ("it is possible for

---

[7] By contesting the applicable standard for facial challenges, the State "presumably believes that [its quoted language from *Wash. State Grange*] dooms a facial challenge because this statute *could* be applied to purely in-state commercial transactions, which a state may constitutionally regulate." *Nat'l Shooting*, 718 F. Supp. 3d at 1257; *see* State-Opp. at 4 (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449–50 (2008)). But "by that logic, a state law policing economic activity ***everywhere in the world***—including within the state—would be immune to facial attack." *Nat'l Shooting*, 718 F. Supp. 3d at 1257. Moreover, the State completely ignores Discount Tire's as-applied challenge. *See* State-Opp. at 5.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

nondiscriminatory regulations to place a significant burden on interstate commerce and thereby violate the dormant Commerce Clause").[8]

CEMA's burden on interstate commerce is clearly excessive compared to any putative local benefits. Discount Tire contests the "deterrent effect on commercial speech" of "a statute that authorizes enormous statutory damages"—a burden recognized by the Fourth Circuit as an "important interest[]," in addition to the "difficult[y] for businesses [in] determin[ing] where Internet users are located." *Omega World Travel, Inc. v. Mummagraphics, Inc.*, 469 F.3d 348, 356 (4th Cir. 2006). Indeed, as Congress has recognized, "since an electronic mail address does not specify a geographic location, it can be extremely difficult for law-abiding businesses to know with which of the[] disparate [state] statutes they are required to comply." 15 U.S.C. § 7701(a)(11); *see also Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1063 (9th Cir. 2009). Plaintiff's appeal to *State v. Heckel*, 143 Wn.2d 824 (2001)—a pre-CAN-SPAM decision from the dial-up internet era—fails to reckon with these significant modern interests. *Cf. Virtumundo*, 575 F.3d at 1050 ("Especially in this arena, the engine of innovation moves far more quickly and nimbly than the methodical pace of legislation.").

In contrast to the burden, CEMA's putative local benefits are minimal. CEMA was passed to provide "immediate relief to ***interactive computer service providers***" who "indicate[d] that their systems [could not] handle the volume of commercial electronic mail being sent and that filtering systems fail[ed] to screen out unsolicited commercial electronic mail messages." Laws of 1998, ch. 149, § 1 (Wash.) (emphasis added); *see also Heckel*, 143 Wn.2d at 833–34 (expressing similar concerns). Neither the State nor Plaintiff discuss this concern, perhaps because it is antiquated after almost three decades of technological advancement. *See Brown*, 4 Wn. 3d at 583 ("CEMA was enacted in 1998, during the Internet's dial-up era"). As for consumer protection, Washington's interest in independently regulating misleading subject lines

---

[8] The State argues *Pike* balancing is outdated. Yet its own citations recognize *Pike* most readily applies to "state 'regulation of activities that are inherently national or require a uniform system of regulation'"—a perfect description of nationwide commercial emails. *Rosenblatt v. City of Santa Monica*, 940 F.3d 439, 452 (9th Cir. 2019) (citation omitted) (cited by State-Opp. at 6).

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 9
(No. 2:25-cv-02008-TL)

is comparatively minimal against the backdrop of an existing federal standard addressing the same type of conduct. *See* 15 U.S.C. § 7704(a)(2); State-Opp. at 7 (arguing the "primary purpose of CAN-SPAM" is to "reduce the sheer volume of unwanted commercial email messages").

### C.    CAN-SPAM Preempts Plaintiff's Broad Application of CEMA.

Plaintiff and the State fail to show that Plaintiff's CEMA claim falls within the "limited, narrow exception"[9] to CAN-SPAM preemption, reserved only for "traditionally tortious or wrongful conduct" encompassed in "falsity or deception." *Virtumundo*, 575 F.3d at 1061–62 (citations omitted).

### 1.    CAN-SPAM Preempts CEMA's Prohibition on Incomplete Subject Lines.

The State misunderstands Discount Tire, which never argued "subject lines … could not ever violate CEMA." *Contra* State-Opp. at 12–13. Rather, CEMA's myopic focus on subject lines—regardless of the email bodies' context—results in ***preemption by CAN-SPAM***. *See* Mot. at 17–18 (citing *Brown*, 4 Wn.3d at 592). A subject line is inherently limited. It cannot—and is not designed to—provide the level of detail required to eliminate any creative misinterpretation that Plaintiff's attorneys might dream up. *See Asabre v. Retail Servs. & Sys., Inc.*, 2023 WL 12187638, at *3–4 (Md. Cir. Ct. 2023) (analyzing email bodies to determine whether subject lines are false or misleading under Maryland's CEMA). Any time the email body adds clarity or context to the subject line, the email could theoretically be construed as false or misleading. This cannot be the law. CEMA is thus preempted on its face.

### 2.    "Misleading" Is Broader than "Falsity or Deception."

Both Plaintiff and the State conflate "misleading" with "falsity or deception." But it is undisputed that: CAN-SPAM's exception is limited to laws that "prohibit[] falsity or deception," Plaintiff-Opp. at 14; CEMA, on the other hand, prohibits only "false or misleading" subject lines,

---

[9] The State's request for a "narrow interpretation" of the preemption clause directly contradicts *Virtumundo*'s holding that CAN-SPAM's preemption clause applies broadly with "limited, narrow exception." *See* State-Opp. at 6 (citation omitted); *Virtumundo*, 575 F.3d at 1061.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 10
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*id.* "[A] statement does not need to be literally false" to mislead. *Id.* at 6. In other words, not all misleading subject lines are necessarily false or deceptive.

Plaintiff ignores this difference, insisting instead that "***any*** 'misleading' email is likewise 'deceptive.'" Plaintiff-Opp. at 16 (emphasis added).[10] The State similarly suggests these concepts are "harmonious in the consumer protection context." *See* State-Opp. at 14. But federal courts have recognized "deception" requires more than just misleading information:

- "***When an advertisement is*** not literally false, but is ***misleading***, '***proof that the advertising actually conveyed the implied message and thereby deceived*** a significant portion of the recipients becomes critical.'" *Cascade Yarns, Inc. v. Knitting Fever, Inc.*, 2011 WL 3471476, at *4 (W.D. Wash 2011) (emphasis added) (citation omitted).

- "Though the language is similar to the CAN–SPAM Act, the California code has been defined as ***prohibitive of 'deceptive' header information only, thereby creating a more onerous burden on a plaintiff than the 'materially misleading' standard*** of the CAN–SPAM Act and thereby avoiding pre-emption by the CAN–SPAM Act." *Zoobuh, Inc. v. Better Broad., LLC.*, 2013 WL 2407669, at *5 (D. Utah 2013) (emphasis added) (citations omitted).

- "[F]alse and misleading are two different things. … **[B]*asic logic dictates that at least some misleading statements are not false***." *Thompson v. United States*, 604 U.S. 408–13 (2025) (emphasis added).

CAN-SPAM confirms this distinction. As the State notes, the statute uses "mislead" in a separate section under a heading titled "[p]rohibition of deceptive subject headings." 15 U.S.C. § 7704(a)(2); *see* State-Opp. at 15. But liability arises under this section only where the party has "***knowledge*** fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient, acting reasonably under the circumstances, ***about a material fact*** regarding the contents or subject matter of the message." *Id.* (emphasis added). Stated differently, the subject line must not only be "likely to mislead," but the sender must have knowledge of the potential to mislead and the subject line must pertain to a material fact. *Id.*

---

[10] Plaintiff appeals to "CAN-SPAM's ***disjunctive*** exception for state laws prohibiting falsity ***or*** deception" to support this reading. Plaintiff-Opp. at 16; *see also* State-Opp. at 14. This flies in the face of the Ninth Circuit's statutory construction. *See Virtumundo*, 575 F.3d at 1062 ("Reading 'falsity' ***in conjunction with*** 'deception,' which connotes a type of tort action based on misrepresentations," CAN-SPAM's preemption exemption "refers to 'traditionally tortious or wrongful conduct.'" (emphasis added) (citation omitted)).

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 11
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

CEMA contains no similar requirement, imposing strict liability on the sender of an email if the recipient deems it misleading. *See Virtumundo*, 575 F.3d at 1063.

The Ninth Circuit's decision in *Virtumundo* further recognizes the distinction between "misleading" and "deceptive." There, the Ninth Circuit held that a defendant's practices must be ***actually deceptive*** for a CEMA claim to be excepted from preemption. *See id.* at 1064 (claims preempted because they "relate to, at most, non-deceptive statements or omissions"). Reviewing Washington law, the court defined "misrepresent"—the standard used in Subsection 1(a)—as "representing incorrectly: to give a false, imperfect or ***misleading*** representation." *Id.* at 1059 (emphasis added) (citation omitted). The plaintiff's claim was preempted because such "broad definitions extend CEMA's prohibitive reach and purport to regulate a vast array of non-deceptive acts and practices"—including "imperfect representations, or immaterial misstatements." *Id.*

The same logic applies to Subsection 1(b), which also invokes a bare "misleading" standard. *Compare* RCW 19.190.020(1)(a) (forbidding header information that "misrepresents or obscures"), *with* RCW 19.190.020(1)(b) (forbidding commercial email that "[c]ontains false or misleading information in the subject line"). Both subsections capture conduct that is neither false nor deceptive.[11] And while "state courts" could have "ultimately mold[ed] CEMA's broad language so as to cabin its breadth," *Virtumundo*, 575 F.3d at 1059, the Washington Supreme Court did the opposite in *Brown* by broadly expanding CEMA's scope. 4 Wn.3d at 592–93.[12]

---

[11] For these reasons, the recent orders in this and the Eastern District respectfully erred in holding *Virtumundo*'s reasoning was limited to Subsection 1(a). *See Ulta*, 2026 WL 571122, at *3–4; *Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, at *1 (W.D. Wash. 2025), *recons. denied*, 2026 WL 125134 (W.D. Wash. 2026); *Ma v. Nike, Inc.*, 2026 WL 100731, at *2 (W.D. Wash. 2026); *Kempf*, 2026 WL 395677, at *4; *Agnew v. Macy's Retail Holdings, LLC*, 2026 WL 764140, at *1 (W.D. Wash. 2026); *Jerde v. Bylt, LLC*, 2026 WL 415445, *1 (W.D. Wash. 2026).

[12] Until recently, courts understood CEMA's email-subject-line provision to be limited to "false and misleading information as to the nature of the email, i.e. that the email is an advertisement." *See Chen v. Sur La Table, Inc.*, 655 F. Supp. 3d 1082, 1092 (W.D. Wash. 2023). *Brown* rejected *Chen* as too narrow an interpretation of CEMA. 4 Wn.3d at 592–93. For this same reason, Plaintiff's suggestion that CEMA has generally coexisted without threat of preemption by CAN-SPAM is disingenuous. Plaintiff-Opp. at 18–19. *Brown* lowered the bar for CEMA claims, which is why more than 80 putative class actions (including this one) have been filed since that ruling.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 12
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Because "*any* … misleading information" in a subject line violates CEMA, no matter its capacity for deception, *id.* at 583, the statute necessarily covers the sort of "imperfect … []statements" that, under CAN-SPAM, states cannot regulate. *Virtumundo*, 575 F.3d at 1059. Thus, claims under Subsection 1(b) which are based on subject lines that are merely "misleading" are preempted.

As Plaintiff acknowledges, the Court must examine the specific claim he has pled, not merely the statutory elements. *See* Plaintiff-Opp. at 15; *Silvas v. E\*Trade Mortg. Corp.*, 514 F.3d 1001, 1006 (9th Cir. 2008) (holding a state law claim is preempted "as applied" if the specific claim pled is preempted, even if the statute might be valid in other circumstances); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at \*9 (W.D. Wash. 2008) (rejecting reliance on CEMA's text in the abstract and dismissing the claim after examining the pleaded facts, which alleged at most "bare error" rather than "falsity or deception"), *aff'd sub nom.*, *Ferguson v. Active Response Grp.*, 348 F. App'x 255 (9th Cir. 2009). Here, Plaintiff alleges subject lines which are neither deceptive nor literally false, making this case different from *Harrington*, *Ma*, *Ulta*, *Agnew*, *Kempf*, and *Jerde*. Indeed, the FAC concedes the individual promotions ended as advertised. *See* Section II.A.2. Thus, at most, Discount Tire's emails could "give a wrong impression," the type of error that falls outside of CAN-SPAM's savings clause. *Mislead*, MERRIAM WEBSTER, https://www.merriam-webster.com/dictionary/mislead (last accessed Apr. 3, 2026).

And even if CEMA's requirement for "misleading" language referred to "deceptive" language, Washington courts recognize that "implicit in [deceptive] is 'the understanding that the actor ***misrepresented*** something of ***material importance***.'" *Stephens v. Omni Ins. Co.*, 138 Wn. App. 151, 166 (2007) (emphasis added) (citation omitted), *aff'd sub nom. Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27 (2009). Plaintiff's allegations fail to meet that standard. *See supra* Section II.A.2. Accordingly, his claim is preempted.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 13
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

### 3. Plaintiff Admits He Must Allege Discount Tire's Statements Were Material to Avoid Preemption.

Plaintiff concedes he must show "some degree of materiality" to escape preemption under *Virtumundo*. Plaintiff-Opp. at 15.[13] The parties, however, disagree regarding whether the statement must be material to the plaintiff or to a reasonable consumer. Under either standard, Plaintiff fails to adequately allege a claim.[14]

Plaintiff's own citations demonstrate the emails must be material ***to the recipient***. *Silverstein v. Keynetics Inc.*, 2016 WL 7475616, at *4 (N.D. Cal. 2016) (holding false "from" names in email headers were immaterial because the plaintiff did "not allege that the individuals listed in the 'from' name fields were actually known to him"), *aff'd*, 727 F. App'x 244, 246 (9th Cir. 2018) (claim preempted by CAN-SPAM because "Silverstein [did not] allege that the 'From' names ***deceived him*** as to the nature of the e-mails" (emphasis added)). Plaintiff and the State reiterate this point further by citing to cases involving a California anti-spam statute that requires materiality ***and*** knowledge by the defendant.[15]

Plaintiff asks the Court to employ the materiality standard from *Kousisis v. United States*, 605 U.S. 114, 131 (2025), i.e., that a fact is material if a reasonable person would attach

---

[13] The State apparently claims that all state consumer protection statutes are exempt from CAN-SPAM preemption. State-Opp. at 7–8. It points to legislative history stating that "[s]tatutes that prohibit fraud and deception in e-mail do not raise the same concern" of complying with multiple state laws, "because they target behavior that a legitimate business trying to comply with relevant laws would not be engaging in anyway." *Id.* at 13 (alteration in original). But Congress's reference to "[s]tatutes that prohibit ***fraud*** and deception" underscores the need to require something more than bare misleading statements.

[14] The State twists the Washington Supreme Court's decision in *Brown*, conflating the distinct concepts of puffery and materiality. State-Opp. at 11. As discussed, *Brown* expanded liability for "***any*** false or misleading information" in subject lines while fully acknowledging the "meaning of '[c]ontains false or misleading information in the subject line' may be broad." 4 Wn.3d at 593, 596. *Brown* certainly did not "confirm" CEMA only creates liability for deceptive statements under CAN-SPAM, as the majority opinion does not mention CAN-SPAM at all.

[15] *See, e.g.*, *Asis Internet Servs. v. Consumerbargaingiveaways, LLC*, 622 F. Supp. 2d 935, 941 (N.D. Cal. 2009) (analyzing a statute barring subject lines "that a person ***knows*** would be likely to mislead a recipient, acting reasonably under the circumstances, about a ***material fact*** regarding the contents or subject matter of the message" (emphasis added)); *Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at *5 (N.D. Cal. 2010) (stressing the importance of defendant's "intentional deception" to its holding that plaintiff's claim arose from a traditional tort theory and thus was not preempted); *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *11–13 (N.D. Cal. 2010) ("material, intentional misrepresentation[s]," "intentional deception," and "knowing" misrepresentations required to avoid preemption).

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 14
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

importance to it in how they proceed. But Plaintiff fails to address *Kousisis*'s teaching that materiality "[r]esembl[es] a but-for standard, … ask[ing] whether the misrepresentation 'constitut[ed] an inducement or motive' to enter into a transaction." 605 U.S. at 131 (citation omitted). Thus, simply receiving an email—which Plaintiff does not allege he ever read—does not make it material to him *or anyone*, even under *Kousisis*.[16] And the advertisements are not material to him simply because Plaintiff is a "consumer." Under Plaintiff's circular logic, *any* marketing email would be excepted from CAN-SPAM preemption. This is why Washington courts require more than materiality in the abstract: the statement must be material *to the plaintiff*. *See* Mot. at 22 (collecting cases).

Regardless, the emails are likewise immaterial under Plaintiff's reasonable-person standard because "[a] material fact is one that not only influences and affects the transaction, but also goes to its *very essence and substance*." 16A David K. DeWolf & Keller W. Allen, WASHINGTON PRACTICE: TORT LAW & PRACTICE § 19:3 (5th ed. 2025) (emphasis added). Plaintiff argues at most that the alleged emails may mislead a consumer regarding the timing of sales. Unlike quality, price, or quantity, a consumer's decision to purchase at the beginning or end of a sale has no impact on the fundamentals of the bargain. Either way, they receive the same deal for the same price. *See, e.g.*, *Montes v. Sparc Group LLC*, No. 104162-4, slip op. at 2 (Wash. Apr. 2, 2026) (holding consumer "does not suffer an injury" under the CPA when they purchase, obtain, and keep "the fungible product [they] sought to obtain" even if the seller misrepresented information about price history).

Because Plaintiff cannot allege the subject lines were material to anyone, let alone him, his CEMA claim is preempted.[17]

---

[16] *Kousisis* discussed materiality in the context of wire fraud and explicitly chose not to define the term. 605 U.S. at 132.

[17] Again, affirmative defenses may form the basis for dismissal under Rule 12(b)(6). *Sams*, 713 F.3d at 1179; *see also Silverstein*, 2016 WL 7475616, at *4 (granting a motion to dismiss where emails did "not amount to material falsity or deception that is sufficient to avoid preemption").

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 15
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**4.      Plaintiff Cannot Allege Knowledge or Injury.**

In admitting materiality is necessary to avoid preemption, Plaintiff also implicitly recognizes—as *Virtumundo* makes clear—that a claim must advance certain elements of "traditional tort theories such as claims arising from fraud or deception" to evade preemption. 575 F.3d at 1061–63. Yet Plaintiff fails to allege knowledge or injury. His claim should be dismissed accordingly.

*No Knowledge*. The FAC merely alleges that Discount Tire offered various sales throughout the year. FAC ¶¶ 81–86. Rather than knowledge, those allegations amount to a rehash of Plaintiff's incorrect assumption that it is *per se* illegal to offer periodic discounts. And they fall well short of the standards articulated in CAN-SPAM or at common law. *See* 15 U.S.C. § 7704(a)(2) (requiring "actual knowledge, or knowledge fairly implied on the basis of objective circumstances, that a subject heading of the message would be likely to mislead a recipient"); *Adams v. King Cnty.*, 164 Wn.2d 640, 662 (2008) (fraud requires "the speaker's knowledge of … falsity" (citation omitted)).[18]

*No Injury*. Plaintiff not only admits he was "not in any way misled or deceived," *Virtumundo*, 575 F.3d at 1063, but he fails to address whether actual injury is necessary to avoid CAN-SPAM preemption.[19] He therefore forfeited any argument against this requirement. As explained in Discount Tire's Motion, claims that "sound in tort" require at least a semblance of actual harm. *Omega*, 469 F.3d at 354; *Virtumundo*, 575 F.3d at 1064 (claim with "no basis in traditional tort theories … f[ell] beyond the ambit of the exception language in the CAN–SPAM Act's express preemption clause").

---

[18] Recognizing this deficiency, Washington's legislature recently codified a knowledge requirement and reduced statutory damages per email to $100. H.B. 2274, 69th Leg., Reg. Sess. (Wash. 2026).

[19] Perplexingly, the State argues Plaintiff alleges he was personally deceived by the at-issue emails. State-Opp. at 10. Plaintiff does not. *See supra* Section II.A.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 16
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**D.      Plaintiff Admits His CPA Claim Fails If His CEMA Claim Fails.**

Plaintiff's Opposition acknowledges his CPA claim rises or falls with his CEMA claim. *See* Plaintiff-Opp. at 19. Because Plaintiff fails to allege a CEMA violation, the Court should dismiss his CPA claim. Mot. at 23–24.

**E.      Plaintiff's Claim for Actual and Treble Damages Fails.**

Plaintiff does not dispute his failure to allege any facts suggesting he sustained actual damages, such as allegations that he opened the emails or purchased products in reliance on the subject lines. Because the "complaint lacks any factual allegations that would support a finding of actual damages," Plaintiff's claim for actual damages must be dismissed. *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011).

Plaintiff likewise does not dispute that Washington law permits treble damages only upon awards of actual damages. Thus, his "failure to show actual monetary damages precludes the recovery of treble damages under the CPA." *Sign-O-Lite Signs, Inc. v. DeLaurenti Florists, Inc.*, 64 Wn. App. 553, 565 (1992) (distinguishing "injur[ies] cognizable under the [CPA]" from "treble damages [which] are based upon 'actual' damages" (citation omitted)).[20] And courts routinely consider "whether [to] dismiss … treble damages request[s] under Rule 12(b)(6)." *Jones v. Cnty. of San Bernardino*, 2022 WL 3138880, at \*7 (C.D. Cal. 2022) (dismissing claim for treble damages barred by statute); *Jang v. Life Ins. Co.*, 2017 WL 11632250, at \*3 (C.D. Cal. 2017) (dismissing request for treble damages because there was "no statutory basis").

**III.      CONCLUSION**

The Court should dismiss Plaintiff's FAC with prejudice, as he cannot cure the fundamental defects in his claims (and does not claim so in his Opposition), and he has already amended his complaint once.

---

[20] Plaintiff fails to explain his apparent belief that CEMA treats treble damages differently than the CPA. Regardless, he acknowledges sentences earlier that he brings a *per se* CPA claim. Plaintiff-Opp. at 19.

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 17
(No. 2:25-cv-02008-TL)

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

DATED this 6th day of April, 2026.

Davis Wright Tremaine LLP
**Attorneys for Defendant The Reinalt-Thomas Corporation**

By *s/ Lauren B. Rainwater*
   Lauren B. Rainwater, WSBA #43625
   Rachel Herd, WSBA #50339
   Caitlyn Courtney, WSBA #62344
   Joshua Peck, WSBA #64328
   920 Fifth Avenue, Suite 3300
   Seattle, WA 98104-1610
   Telephone: 206-622-3150
   Email: laurenrainwater@dwt.com
          rachelherd@dwt.com
          caitlyncourtney@dwt.com
          joshpeck@dwt.com

*I certify that this memorandum contains 6,297 words in compliance with the Local Civil Rules.*

DEFENDANT'S REPLY I.S.O. MOT. TO DISMISS
FIRST AMENDED COMPLAINT – 18
(No. 2:25-cv-02008-TL)